**In re A.H. ROBINS COMPANY, INC., Debtor.**

**Employer Tax Identification No. 54–0486348.**

**John Alan Jones, Movant,**

v.

**Sandra L. Smith, Respondent.**

**No. 85–01307–R.**

United States District Court, E.D. Virginia, Richmond Division.

Feb. 2, 1999.

**80**

John Alan Jones, Jones & Michaels, Raleigh, NC, for Movant.

Sandra L. Smith, Powersville, GA, for Respondent.

Orran L. Brown, Richmond, VA, for the Dalkon Shield Claimants Trust.

### MEMORANDUM OPINION

SPENCER, District Judge.

This matter comes before the Court on the Motion of John Alan Jones (the "Movant") for an Order Directing Issuance of Pro Rata Payment Checks to the Movant (the "Motion"). The Respondent, Sandra L. Smith (the "Respondent"), has not responded to the Motion. The Dalkon Shield Claimants Trust (the "Trust") takes no position with respect to this matter. The parties have not asked to be heard on the Motion and the matter is ripe for disposition. Upon consideration of the pleadings, the Court makes the following Findings of Fact and Conclusions of Law.

### FINDINGS OF FACT

These findings are based on the assertions set forth in the Motion. The Movant has represented the Respondent in the Dalkon Shield litigation from 1989 to the present. The Respondent settled her claim with the Trust in August of 1993 for $15,000.00; in December of 1995 and December of 1996, pro rata payments were paid to the Respondent. The December 1996 pro rata payment was in the amount of $3750.00, and after deduction of a 10% attorney's fee, the Respondent was entitled to receive $3375.00. In December of 1996, this money was paid to the Respondent in the form of a check from the Movant's trust account. In January of 1997, a bookkeeper of the Movant's law firm inadvertently sent a second check to the Respondent in the amount of $3375.00. The Respondent endorsed and either cashed or deposited both checks. As a result, the Respondent received double payment for her portion of the December 1996 pro rata payment. The Respondent and her husband refuse to discuss the overpayment with the Movant.[1]

In late December of 1998, the Trust issued another pro rata settlement payment equal to 12% of the Respondent's original settlement, thus entitling the Respondent to $1800.00 minus the 10% attorney's fee. In accordance with Trust policy, a check for $1800.00 was issued to the Respondent care of the Movant's law firm. The Movant is currently holding this check, and the Respondent's husband has asked the Movant to send this check to the Respondent. It also appears that a final pro rata payment will be made at some undetermined point in the

---

1. The Motion indicates that in March of 1997, when the Movant discovered the overpayment, the Movant spoke with the Respondent's husband who acknowledged the mistake and assured the Movant that he would get back in touch to make arrangements for repayment. The Respondent's husband never made such contact and has since refused to discuss the overpayment with the Movant.

future, though the exact time and amount of this final payment cannot be determined at this time. To recoup the money mistakenly sent to the Respondent in January of 1997, the Movant asks for the following relief in the Motion: 1) the Movant shall return to the Trust the Trust's check in the amount of $1800.00, which was made payable to the Respondent care of the Movant's law firm; 2) the Trust shall issue a check in the amount of $1800.00 payable solely to the Movant's law firm; 3) at the time of the future pro rata payment or payments, the Trust shall pay the first $1575.00 solely to the Movant's law firm; 4) if the future pro rata payment or payments exceeds $1575.00, such funds shall be made directly payable to the Respondent to the extent that they exceed $1575.00, and the Movant's law firm shall be entitled to no further fee; and 5) if the future pro rata payment or payments does not exceed $1575.00, this payment or payments shall be made directly payable to the Movant's law firm and the Movant's law firm shall not be entitled to any further reimbursement.

### CONCLUSIONS OF LAW

**I. Court's Non–Involvement in Fee Disputes**

█ Throughout the course of the Dalkon Shield litigation, the Court has refrained from getting involved in fee disputes between claimants and their attorneys. The Claims Resolution Facility (the "CRF"), in § G.8, speaks to this non-involvement, stating the following: "The Trust and claimants shall each bear their own costs, expenses, and attorneys' fees in connection with the Claims Resolution Process, except as provided otherwise by law." The Fourth Circuit did get involved in a fee dispute in *Bergstrom v. Dalkon Shield Claimants Trust*, 86 F.3d 364 (4th Cir.1996), where the Court affirmed the District Court's Order limiting an attorney's fee to 10% of any pro rata payments received on behalf of a claimant. The situation here, however, differs from that in *Bergstrom* in that the amount of the attorney's fee is not in dispute. The only dispute here involves a supposed overpayment.

█ In addition, it has been well established in this litigation that in the absence of a showing that a dispute involves something more, the Court will not involve itself with the day-to-day operations of the Trust as such operations are best left to the Trust's discretion. *See* Plan of Reorganization § 8.05; *see also Johnson v. Dalkon Shield Claimants Trust*, 197 B.R. 609 (E.D.Va.1995), *Kidd v. Dalkon Shield Claimants Trust*, 197 B.R. 597 (E.D.Va.1994). Much of the relief requested in the Motion, including the Trust's issuance of a new check for $1800.00 payable to the Movant's law firm and the Trust's payment of the first $1575.00 of the Respondent's future pro rata payment or payments to the Movant's law firm, involves ordinary Trust operations. Because the Movant has failed to demonstrate that the matter here involves something more, the Court will not involve itself with the Trust's operations.

**II. The *Weisfuse* Decision**

In *In re A.H. Robins Co., Inc. (Weisfuse v. Wagner)*, 206 B.R. 810 (E.D.Va.1997), the Court held that its March 1, 1995 Order, which set a ceiling of 10% on the amount of fees which an attorney may charge against a claimant's pro rata payment, did not provide for an entitlement to fees but instead limited the fees which may be retained. The attorney, who had been holding 10% of a claimant's pro rata payment because he contended that he was entitled to these fees despite the fact that he had been fired by the claimant, was ordered by the Court to forward these funds to the claimant and to provide the Trust with proof of such disbursement. In conclusion, the Court held as follows:

> To the extent that Weisfuse [the attorney] may be entitled, on some basis other than the March 1 Order, to additional compensation for services rendered on behalf of his former client, the Court finds that this **dispute is a matter best left for the parties to resolve in another forum.**

*Id.* at 812 (emphasis added). The dispute here is similar to that provided above. The Movant claims that he has overpaid the Respondent in the amount of $3375.00, and is holding the Respondent's recent December 1998 pro rata payment, which is made pay-

able to the Respondent care of the Movant's law firm, in the amount of $1800.00. While the Movant may indeed be entitled to repayment of the $3375.00 overpayment, this dispute is best left for resolution in another forum.

### CONCLUSION

The Court will refrain from policing the overpayment dispute between the Movant and the Respondent. It is well established that such fee disputes are best left for another forum to decide, perhaps the local state court. In addition, much of the relief sought in the Motion would involve the Court's involvement in the Trust's day-to-day operations which are best left to the Trust's discretion. For the foregoing reasons, the Motion will be denied.