In re A.H. ROBINS COMPANY, INC., Debtor, Employer Tax Identification No. 54–0486348.

Anthony GUNNELL, Movant,

v.

DALKON SHIELD CLAIMANTS TRUST, Respondent.

No. 84–01307–R.

United States District Court, E.D. Virginia, Richmond Division.

Aug. 16, 1994.

Patricia Jo Stone, Lakewood, Colorado, for Anthony Gunnell.

Orran Lee Brown, Richmond, Virginia (Melody G. Foster, on the briefs), for Dalkon Shield Claimants Trust.

### MEMORANDUM

MERHIGE, District Judge.

This matter is before the Court on motion by Dalkon Shield Claimants Trust ("Trust") Claimant Anthony Gunnell, DS–221545, to increase the limit on his potential award under alternative dispute resolution (ADR). When Gunnell elected to resolve his claim through ADR, the limit on awards was $10,-000. Thereafter the Trust raised the limit to $20,000. Claimant, by counsel, asks the Court to allow the ADR referee to use the new $20,000 limit in considering his claim. For reasons given below, the Court denies the motion.

On April 1, 1992, the Trust established the ADR process as an option for Claimants who had declined Initial Option 3 offers of $10,000 or less and who had not yet entered the in-depth review phase of the claims resolution process. At that time, Gunnell had declined his Initial Option 3 offer and had elected to resolve his claim through arbitration. Because his claim had already entered the in-depth review process, Gunnell was not eligible for ADR when it initially became an option.

Later in 1992, the Trust decided to offer ADR to claimants such as Gunnell who were otherwise eligible when they declined their initial offers but entered in-depth review before ADR became available. In January, 1993, the Trust wrote to Gunnell extending the ADR option. The letter explained what Gunnell had to do to elect ADR in lieu of arbitration, and enclosed copies of: (1) the ADR rules; (2) a question-and-answer booklet on ADR; and (3) an election form, to be

signed and returned to the Trust in order to elect ADR.

The letter stated:

[T]he most that a claimant can receive in ADR is $10,000.

. . . .

. . . The election to proceed with ADR will be binding, and you will not be able to change your mind once the election is made.

Letter from Trust (R. Payne) to Gunnell of 1/4/93 at 1, found at *Response,* Exh. A at 8–9.

The ADR rules stated:

This election shall be binding on the claimant.

. . . .

Awards shall be for compensatory damages only and shall not exceed $10,000 (U.S.).

First Amended Rules Governing Alternative Dispute Resolution at 1, 17 (January, 1993), found at *Response,* Exh. A at 11–18.

The question and answer booklet stated:

**Q. Is there a limit on the amount I can receive in ADR?**

A. Yes, the most a referee can award is $10,000 (U.S.).

Q & A, Common Questions About Alternative Dispute Resolution at 4 (January, 1993), found at *Response,* Exh. A at 19–22 (emphasis in original).

The election form stated:

I understand that in ADR $10,000 (U.S.) is the maximum I can receive and that any award a referee makes to me will be **full and final** payment for my claim. . . .

I understand that this election is **binding.**

In–Depth Review/Alternative Dispute Resolution Election Form (January 1993), found at *Response,* Exh. A at 23 (emphasis in original).

Gunnell signed and returned the ADR election form in compliance with a March 1, 1993, deadline. The next step in the ADR process was for Gunnell to confirm to the Trust that he had dismissed any pre-bankruptcy lawsuit pending against A.H. Robins Company. The Trust received Gunnell's con-

firmation in November, 1993. The Trust then sent him a detailed ADR agreement and obtained this Court's certification for him to proceed with the ADR process. An ADR hearing for Gunnell was set for April 11, 1994, and rescheduled at the request of his counsel for May 26, 1994.

Meanwhile, on September 1, 1993, the Trustees of the Trust voted to increase the ADR limit to $20,000. The new limit applied to claimants who elected ADR on or after September 1, 1993.

In his pre-hearing ADR brief and during his ADR hearing, counsel for Gunnell argued that the referee should be allowed to use the higher limit of $20,000 in considering his award. With the agreement of the Trust and counsel for Gunnell, the referee stayed the case pending resolution of the issue by this Court. This motion followed.

Gunnell argues that the new $20,000 limit should apply to his ADR award because: (1) he had no control over the timing of his ADR election because the Trust forced him to do so by March 1, 1993; (2) he did not sign the detailed ADR agreement until after September 1, 1993, when the higher limit was announced, and the delay was the fault of the Trust; and (3) the detailed ADR agreement did not say that the award limit would be $10,000, and Gunnell would not have signed the detailed agreement if he had known that the limit on his ADR award remained at $10,000.

The Trust opposes Gunnell's motion on the grounds that: (1) the establishment of rules and procedures for ADR is a matter of day-to-day operations within the Trust's discretion; and (2) Gunnell's motion lacks merit because he knew of and agreed to be bound by the $10,000 limit when he signed the election form.

The Court's jurisdiction over Trust matters is not without limit. This Court retained jurisdiction over the Trust and the Plan for many purposes, but that retained jurisdiction expressly excludes authority over, and authority to monitor, the day-to-day operations of the Trust. Debtor's Sixth Amended and Restated Plan of Reorganization (*Plan* ) § 8.05 (March 28, 1998), *con-*

firmed in *In re A.H. Robins Co.*, 88 B.R. 742 (Bankr.E.D.Va.1988), *aff'd*, 880 F.2d 694 (4th Cir.), *cert. denied*, 493 U.S. 959, 110 S.Ct. 376, 107 L.Ed.2d 362 (1989). Authority over day-to-day operations resides with the Trust. The Trust has responsibility for resolving all Dalkon Shield claims. *Plan* § 5.05; Claimants Trust Agreement (*CTA* ) § 2.02, found at *Plan*, Exh. A. The Claimants Trust Agreement grants the Trustees broad authority to act as they "deem reasonably necessary or desirable for the proper management of the Trust." *CTA* § 4.03(b).

This Court recently considered a request for relief from day-to-day Trust operations. In that matter, a claimant asked the Court for relief from the Trust's decision to disallow her claim for failing to file a timely Option Election Form. *Mantush v. Dalkon Shield Claimants Trust*, 197 B.R. 493 (E.D.Va.1994). This Court stated:

> This Court has not had occasion to decide the standard to be applied in reviewing Trust actions, but it has clearly relinquished power to review day-to-day operational decisions of the Trust. Section 8.05 of the Plan, in which this court retains jurisdiction for a number of purposes, states: "[N]othing in this Section 8.05 is intended to confer jurisdiction upon the Court over, or grant authority to monitor, the day-to-day operations of the Trusts or the Claims Resolution Facility." Therefore, as a prerequisite to obtaining relief from a decision committed to the discretion of the Trust, the movant must show facts or issues that elevate the matter above the level of ordinary operations.

*Id.* at 494. Therefore, to reach review by this Court, Gunnel must first show that his circumstances rise above ordinary, day-to-day operations of the Trust.

■ Gunnell first argues that he is entitled to the higher ADR limit because the timing of his ADR election was out of his control. The Trust required him to elect ADR by March 1, 1993, or lose forever the opportunity to do so. Therefore, Gunnell argues, the Trust should not be permitted to penalize him for electing ADR prior to September 1, 1993, when the higher limit went into effect.

■ Nothing in this argument elevates the setting of a deadline above the level of ordinary Trust operations. Indeed, the Trust has a duty to set and enforce rules and deadlines in order to satisfy its responsibility to all claimants to manage its operations efficiently and effectively.

■ Gunnell's second argument is that he is entitled to the higher ADR limit because the delay between his election and his detailed agreement in November was the fault of the Trust. The Court need not struggle to find logic in this argument because its factual premise is wrong. The delay between Gunnell's ADR election and November, 1993, was due to his failure to send in proof that he had dismissed his pending lawsuit. Further, the length of the delay in this case, regardless of its cause, is not of such proportion as to be outside the realm of ordinary claims procession operations.

■ Gunnell's final argument is that he is entitled to the higher award limit because the detailed ADR agreement he signed in November did not state that the $10,000 limit applied to him. He asserts that he would not have signed the detailed agreement if it had so stated. The detailed agreement did not need to restate the award limit. The Trust's letter, the ADR rules, the question and answer booklet, and the election form itself, all stated clearly that the limit on Gunnell's award would be $10,000 and that his election was a binding agreement. It was not necessary for Gunnell to agree in November to the $10,000 limit—he had already done so when he elected ADR.

Gunnell simply wants to change the terms of his binding ADR agreement. The Trust is under no obligation to agree to new terms. This is a matter of setting and enforcing ADR rules, a matter that is within the Trust's discretion and within the realm of ordinary operations. This Court declines to interfere.