In re A.H. ROBINS COMPANY, INCOR-
PORATED, Debtor, Employer's Tax
Identification No. 54–0486348.

Denise S. REICHEL, Philip T. Reichel,
Debra A. Butler, Katie M. Waddell,
Richard K. Fellows and Vivian Fellows,
Movants,

v.

DALKON SHIELD CLAIMANTS
TRUST, Respondents.

No. 85–01307–R.

United States District Court,
E.D. Virginia,
Richmond Division.

Dec. 2, 1994.

Anthony J. Nemo, Meshbesher & Spence,
Ltd., Saint Paul, Minnesota, Theodore I.

Brenner, Brenner, Dohnal, Evans & Yoffy, Richmond, Virginia (Ronald I. Meshbesher, Meshbesher & Spence, Ltd., Saint Paul, Minnesota, on the briefs), for Denise S. Reichel and Phillip T. Reichel.

Joseph S. Friedberg, Minneapolis, Minnesota, Theodore I. Brenner, Brenner, Dohnal, Evans & Yoffy, Richmond, Virginia, for Debra A. Butler, Katie M. Waddell, Richard K. Fellows and Vivian Fellows.

Orran Lee Brown, Richmond, Virginia, for Dalkon Shield Claimants Trust.

## *MEMORANDUM*

MERHIGE, District Judge.

This matter is before the Court on the Movants' motion to interpret, in part, the Sixth Amended and Restated Plan of Reorganization of the A.H. Robins Company ("Plan") and the related documents under which the Robins Bankruptcy is being managed. The Movants have requested that the Court interpret these instruments in the following manner:

(1) Claims Resolution Facility ("CRF") § G.2 governs the Alternative Dispute Resolution ("ADR") process and requires the Trust to presume that the injuries listed in CRF Exhibit A are caused by the Dalkon Shield;

(2) First Amended ADR Rule XII.G(2) and Second Amended ADR Rules 12.H(1) and 12.H(2), which ignore the presumption of CRF § G.2, and place the burden upon claimants to prove that the injuries listed in CRF Exhibit A were caused by the Dalkon Shield, are inconsistent with the CRF;

(3) First Amended Rule XII.G(2) and Second Amended Rules 12.H(1) and 12.H(2) are void and unenforceable because the Trustees are prohibited from adopting

ADR rules which are inconsistent with the CRF.

This Court has the exclusive jurisdiction to interpret the relevant instruments and address these matters. *See* Debtor's Sixth Amended and Restated Plan of Reorganization § 8.05, March 28, 1988, *confirmed by In re A.H. Robins Co.*, 88 B.R. 742 (E.D.Va. 1988), *aff'd* 880 F.2d 694 (4th Cir.1989), *cert. denied* 493 U.S. 959, 110 S.Ct. 376, 107 L.Ed.2d 362 (1989); *see also In re A.H. Robins Co., Inc.*, 972 F.2d 77 n. 1 (4th Cir. 1992) (affirming the Court's exclusive jurisdiction).

### *Factual Background*

The Movants each filed Option 3 claims with the Trust and received early evaluation settlement offers. These offers were rejected and the Movants proceeded to the In–Depth Evaluation/Settlement Conference or ADR phase of the claims resolution process. *See* CRF § E.4. Each of the Movants elected ADR.

In electing ADR, Denise Reichel, Debra Butler, Katie Waddell and the Fellows' signed ADR election forms provided by the Trust. In addition to the election forms, the Trust also provided these Movants with copies of the First Amended ADR rules and an ADR question and answer booklet. Both the rules and the booklet informed the Movants that they would be responsible for establishing causation at the ADR hearing.[1] After making their election, the claimants received and signed an ADR contract which unambiguously sets forth the Movants' agreement to be bound by the ADR rules.

Movant Philip Reichel proceeded somewhat differently as he made his ADR election after January 1, 1994, the effective date of the Second Amended ADR Rules. Before

---

1. First Amended ADR Rule XII.G, captioned "Burden of Proof" reads as follows:

   It is claimant's burden to prove by a preponderance of the evidence that (1) she or he suffered an injury, (2) the injury was caused by the use of the Dalkon Shield, and (3) she or he should receive compensatory damages.

   Movant's Motion to Interpret, Exh. B, First Amended ADR Rule XII.G.

   The question and answer pamphlet contained the following exchange:

   Q: Do I have the burden of proving that I was injured by the Dalkon Shield or is it the Trust's burden to prove that I was no injured by the Dalkon Shield?
   A: You, the claimant, must prove that you (1) suffered an injury; (2) the injury was caused by the use of the Dalkon Shield; and (3) should receive compensatory damages.
   Respondents Response, Exh. B.

making this election, Philip Reichel received from the Trust a copy of the new ADR rules and an updated version of the question and answer pamphlet.[2] In choosing ADR, Philip Reichel signed an "ADR Election and Agreement" which, like the instruments signed by the other Movants, lucidly stated his agreement to be bound by the ADR rules.

After being certified for ADR by this Court, the Movants scheduled ADR hearings. The Reichels were to have their hearing on August 22, 1994, the Fellows' had a hearing scheduled for August 23, 1994, Butler's hearing was scheduled for August 24, 1994, and Waddell's hearing was set for August 25, 1994.

The Movants challenge the very ADR rules to which they voluntarily and knowingly subjected themselves when they elected ADR. They assert that CRF section G.2 requires the Trust to presume causation and that the ADR rules disregard this presumption. This alleged inconsistency between the ADR rules and the CRF, the Movants assert, renders the ADR rules void and unenforceable to the extent of such inconsistency. Thus, the Movants conclude that the provision binding claimants to the ADR rules must "drop out of the ADR contract." Motion to Interpret Plan at 15.

### Discussion

■ The Court is satisfied that the Movants' challenge to the ADR rules is more than a grievance about "ordinary operations." *See Mantush v. Dalkon Shield Claimants Trust,* 197 B.R. 493 (E.D.Va.1994) ("as a prerequisite to obtaining relief from a decision committed to the discretion of the Trust, the movant must show facts or issues that elevate the matter above the level of ordinary operations"). Because the Movants have set forth specific facts and colorable issues that call into question both the meaning of a CRF provision and the viability of certain ADR rules, the Court finds that the *Mantush* prerequisite has been satisfied and,

on this basis, will proceed to evaluate the motion.

■ "This Court will not lightly declare a Trust action to be without authority." *Besag v. Dalkon Shield Claimants Trust,* 197 B.R. 590, 596 (E.D.Va.1994). This deference to the Trust's broad discretion has been explicitly extended to the setting and enforcement of ADR rules. *See Gunnell v. Dalkon Shield Claimants Trust,* 197 B.R. 533 (E.D.Va. 1994).[3] Thus, in reviewing Trust actions, the Court will ask only two questions. The first is whether or not the contested action violates some provision of the Plan or related instrument. If so, the action is outside the authority of the Trust and, thus, invalid. *Besag,* 197 B.R. at 596. If no such provision is violated, the second question is whether or not the Trust has struck the proper balance between the interests and needs of individual claimants and the overall Trust policy of expeditiously, fairly and fully serving all claimants. *Id.* If the Trust satisfies this inquiry, the challenged policy or action will not be disturbed by this Court.

■ In the instant matter, the Movants' arguments only implicate the first prong of this analysis. They assert that the enforcement of the ADR rules, which place the burden of proving causation on claimants, runs afoul of CRF section G.2. According to the Movants, section G.2 requires the Trust to presume causation in the ADR hearing and bear the burden of "establishing alternative causes for the injury or other mitigating factors." Motion to Interpret at 10. The Movants' interpretation of section G.2 is incorrect. Section G.2 reads, in full, as follows:

2. *Scheduled Compensable Claims.* In determining whether an injury *could have been* caused by the Dalkon Shield and, therefore, could be eligible for compensation, the Trust shall presume that the injuries listed in Exhibit A are *eligible for compensation.* The Trust shall consider on a case by case basis whether any injury

2. The rule regarding a claimant's burden of proof on causation can be found at Second Amended ADR Rule 12.H.2. Movant's Motion to Interpret, Exh. C.

3. It is uncontested that the discretionary authority to set and modify ADR rules is vested in the Trustees. *See* Claimants Trust Agreement § 4.03(b)(xii).

not in Exhibit A is eligible for compensation.

CRF § G.2 (emphasis added). The import of this language is that the section G.2 presumption applies only when the Trust is making a threshold claims resolution determination—whether or not a claimant with an alleged Exhibit A injury is eligible for compensation. The section in no way requires the Trust to presume causation; rather, it directs the Trust to presume *eligibility for compensation* when a claimant possesses Exhibit A injuries that *"could have"* been caused by the Dalkon Shield. In short, section G.2 expedites the processing of claims submitted by claimants with alleged Exhibit A injuries by removing the issue of causation from the initial evaluation process.

This interpretation of section G.2 is underscored by the existence and language of CRF section G.13. This section states, in pertinent part, that "[c]ausation will be in issue except as waived by the Trust." CRF § G.13. Reading these two sections together indicates that causation, unless waived by the Trust, becomes a contested issue once compensation eligibility is initially established, and will remain an issue throughout the adversarial ADR process.[4]

Because the Court concludes that section G.2 does not require the Trust to presume causation during ADR, the contested ADR rules are not inconsistent with this section. To the contrary, the ADR rules concerning causation are completely consistent with the Plan and reflect the Trust's long standing policy of placing the burden of establishing causation on the claimant. Since the Movants have failed to satisfy their burden of showing that the ADR causation rules violate any provision of the Plan or any related document, the implementation and enforcement of these rules are within the authority of the Trust and the Court will not "second-guess" the Trust on this matter. *Besag*, 197 B.R. at 596.

 The Movants' inability to convince the Court to interpret section G.2 in the manner set forth in their argument reduces their motion to an attempt to escape their contractual obligations. The Movants voluntarily and knowingly elected ADR over arbitration, trial and their Option 3 offers. In making this election, they received ample notice through the ADR rules, the question and answer pamphlet and the ADR contracts, that they would be responsible for establishing causation at the ADR hearing. Most importantly, the Movants agreed to be bound by the ADR rules in their ADR contracts. Accordingly, "this is a matter of setting and enforcing ADR rules, a matter that is within the Trust's discretion" and one with which the Court will not interfere. *Gunnell*, 197 B.R. at 536.

---

4. As part of their argument, the Movants state that provisions of the CRF are internally inconsistent unless their interpretation of section G.2 is accepted. Specifically, the Movants contend that the validity of the Option 2 claims process depends upon their interpretation of section G.2. In short, they first note that CRF § D requires the Trust to waive all defenses, including causation, in compensating claimants under Option 2. A waiver of causation, the movants continue, must equate to a presumption of causation because CRF § A(4) suggests that causation must be presumed or proven before a claimant can be compensated. The Movants conclude that the only possible authority for such a presumption is CRF § G.2, as interpreted in their motion.

The Court disagrees with this conclusion. It is true that CRF § D expressly directs the Trust, in Option 2 cases, to "waive all defenses to the claim" except those listed in that section. The Movants' argument, however, is premised upon an unfounded and tenuous interpretation of CRF § A(4). This section unambiguously states that the purpose of the CRF is to be attained by "providing no compensation to persons not injured by the Dalkon Shield." CRF § A(4). The section merely outlines the purpose of the CRF and the methods to attain that purpose. Nowhere does section A(4) even imply that causation must be presumed in Option 2 situations, and the Court declines an invitation to engage in syllogistic games to reach such a conclusion. If the Court were to conclude otherwise, the unacceptable result would be an erosion of the Trust's power to simplify and expedite the claims process for the benefit of all claimants.

The Court also notes that the waiver of defenses in section D reflects the parallel power of the Trust to concede the causation issue in other stages of the claims process. *See* CRF § G.13. Each situation represents the policy of efficiently and expeditiously resolving claims.