In re A.H. ROBINS COMPANY, INCOR-
PORATED, Debtor, Employer's Tax
Identification No. 54–0486348.

DALKON SHIELD CLAIMANTS
TRUST, Movant,

v.

Keith FLEMING and Anthony
Pettinato, Respondents.

No. 85–01307–R.

United States District Court,
E.D. Virginia,
Richmond Division.

Feb. 24, 1995.

Anthony J. Nemo, Meshbesher and Spence, Ltd., Saint Paul, Minnesota, Theodore I. Brenner, Brenner, Dohnal, Evans & Yoffy, Richmond, Virginia, for Keith Fleming and Anthony Pettinato.

Orran Lee Brown, Richmond, Virginia, for Dalkon Shield Claimants Trust.

### *MEMORANDUM*

MERHIGE, District Judge.

This matter is before the Court on the Dalkon Shield Claimants Trust's ("Trust") motion to interpret, in part, the Sixth Amended and Restated Plan of Reorganization of the A.H. Robins Company ("Plan") and the related documents under which the Robins Bankruptcy is being managed.

### I.

Respondents are married to Dalkon Shield claimants Jean Fleming and Teresa Pettinato, each of whom settled their claims and accepted their offers of compensation under Option 3 of the Claims Resolution Facility ("CRF"). Respondents, on the other hand, as non-user Dalkon Shield claimants asserting loss of consortium damages, rejected their Option 3 offers and opted to have their claims decided through Alternate Dispute Resolution ("ADR"). The ADR hearings were scheduled for June 16–17, 1994, before Referee Marilynne Roberts in St. Paul, Minnesota.

On June 1, 1994, the Trust, through a local non-lawyer advocate, filed a Statement of Facts and Issues for both cases pursuant to Rule VII of the First Amended ADR Rules.[1] Because this statement was unclear as to

---

1. The parties agree that the First Amended ADR rules apply in this matter. The rules have subsequently been amended. *See* Second Amended ADR Rules.

whether the Trust was contesting causation of the wives' injuries, Respondents moved for a more definite statement. The Trust responded, on June 9, 1994, by submitting a revised Statement of Facts and Issues in which the Trust stated that it intended to contest causation. On June 10, 1994, counsel for Respondents informed the Trust, by letter, that the Trust could not contest causation in the ADR hearings because doing so (1) would violate the terms of the General Release of Claims signed by both wives,[2] and (2) was barred by the principle of collateral estoppel as espoused by Minnesota courts.[3] *See* Trust Memorandum, Ex. B at 27–30. On June 14, 1994, the Trust replied to these assertions, and informed Respondents, *inter alia*, that voluntary settlement offers were not admissions of liability and were protected by the confidentiality provision of the CRF. *See* CRF § G.4. The Trust further informed Respondents that their arguments invoked the exclusive jurisdiction of this Court to interpret the Plan and related instruments, and that any further attempt to have such arguments addressed in any other forum would result in a stay of the ADR proceedings. *See* Trust Memorandum, Ex. B at 32–35.

At this point, the flurry of communications continued via telephone, voice mail and facsimile. Reproduction of each conversation would not be helpful in resolving the instant matter; however, the Court notes that the gist of these communications was that the Trust opposed Respondents' intention to present their collateral estoppel argument to Roberts. *See supra* note 3 (discussing estoppel argument). On June 16, 1994, the parties and the Referee conducted a telephonic conference during which the Trust indicated the necessity of, and apparently moved for,[4] a continuance on the basis that Respondents were raising issues regarding matters falling outside the jurisdiction of an ADR referee. On this basis, the Referee continued the cases indefinitely and ordered that the Trust reimburse Respondents' non-refundable travel expenses.[5]

The instant matter followed soon thereafter. In its motion, the Trust moves this Court to rule as follows:

(1) In an ADR proceeding brought by a husband of a woman who has previously settled her Dalkon Shield Claim with the Trust, the Trust may contest whether the Dalkon Shield caused the wife's alleged injuries, and the previous settlement of the wife's claim is not admissible in the husband's ADR proceeding as evidence of any element of his claim; and

(2) An ADR claimant's travel expenses cannot be assessed against the Trust after the claimant's ADR hearing was stayed or continued because the claimant had raised and refused to withdraw an issue within this Court's exclusive jurisdiction.

## II.

■ The Trust contends that it may, in an ADR proceeding initiated by the husband of

---

2. Paragraph Four of the General Release, which was signed by both Teresa Pettinato and Jean Fleming upon acceptance of their offers, reads as follows:

I also covenant and agree never to commence or voluntarily aid in any way, prosecute or authorize to be commenced against the Released Parties any action or other proceeding based upon any of the claims described in Paragraph 2 above, which are the subject of this Release.

Trust Rep.Mem., Ex. A.

3. As regards this latter contention, Respondents propose that the Trust conceded causation for purposes of the wives' settlement conferences and may not later contest that same issue in a husband's ADR hearing. Thus, Respondents suggest that information regarding a prior settlement is admissible for the purpose of proving an element of their claim.

4. The parties seem unable to agree as to whether the Trust actually moved for a continuance. The Referee, however, was not so confused as her orders plainly state that the continuance was entered on the Trust's motion. *See* Trust's Mem., Ex. B at 41–42.

5. Respondents' counsel did not move for such expenses during the conference call. Rather, he submitted a proof of costs on June 21, 1994, in accordance with the Referee's orders. Pettinato moves for $963.38 in expenses, including transportation expenses, four nights in a hotel, meals and cab fare. Fleming seeks $1,518.22 in costs, including airfare, four nights at a hotel, rental car, meals and babysitting costs. *See* Trust Mem. Ex. B at 43–67. The Trust notes that Fleming's wife was not included on Fleming's witness list, yet her expenses were claimed nonetheless.

a Dalkon Shield user who had previously settled her claim, contest causation of the wife's injuries at the husband's ADR hearing. The Trust's contention, as a general principle, is absolutely correct. Under the facts of the instant matter, however, the Trust may not cloak itself with this rule.

### A. Admission of causation by the Trust

Under the First Amended ADR rules, the burden of proof on a claimant is unambiguously set forth in Rule XII.G. Specifically, a claimant must show "by a preponderance of the evidence that (1) she or he suffered an injury; (2) the injury was caused by the use of the Dalkon Shield; and (3) she or he should receive compensatory damages." First Amended ADR Rule XII.G. The Trust notes further that when the claimant is a non-user, such as a claimant's husband, the non-user must prove, absent contrary indications from the Trust, that the Dalkon Shield caused his wife's injury *and* that her injury caused his injuries (i.e., loss of consortium). Thus, a husband claimant bears the burden of proving double causation unless the Trust indicates otherwise.[6]

■ The record demonstrates, however, that the Respondents are partially relieved of this burden in the instant matter as the Trust has conceded causation of the wives' injuries. As stated previously, upon Respondents' request, the Trust filed with the Referee two amended Statements of Facts and Issues. In the Pettinato statement, the Trust noted as follows:

> The Trust does not contest that Mrs. Pettinato's Dalkon Shield use may have been a minor contributing factor in her injuries. However, it is Mr. Pettinato's burden to prove that his wife's use of a Dalkon Shield caused Mr. Pettinato loss of consortium.

Trust Memorandum, Ex. B at 22. Likewise, in the Fleming statement, the Trust plainly states that Mrs. Fleming, prior to her marriage, was inflicted with "Dalkon Shield related PID." *Id.* at 25. These statements were set forth in the documentation submitted to the Referee for her consideration prior to

Respondents' ADR hearings. Consequently, they are, in essence, judicial admissions, and serve to remove the issue of causation of Mrs. Pettinato's and Mrs. Fleming's injuries from contention in Respondents' subsequent ADR hearings. In short, these admissions are binding on the Trust, and the Trust may not now, in hindsight, contest causation of the wives' injuries. Respondents, however, remain responsible for proving that their loss of consortium injuries were caused by their wives' injuries. Moreover, for the reasons which follow, they may not use any information related to their wives' settlements during their ADR proceedings.

### B. Causation and use of settlement conference information in ADR

■ Respondents raise a larger issue by arguing that voluntary settlement of a user's claim "bars the Trust from contesting causation of those injuries upon which the Trust based its offer of settlement, when the related husband-claimant subsequently seeks loss of consortium damages in ADR based upon those injuries." Respondent's Mem. at 15. The Trust disagrees, arguing, *inter alia,* that CRF § G.4 renders the settlement of a claim "in the nature of settlement discussions" and, thus, inadmissible in subsequent ADR proceedings. In response, Respondents argue that § G.4 cannot apply in ADR because certain conduct by the Trust proves the inapplicability of that provision. Specifically, Respondents note the Trust's submission of the following materials to the Referee: the wives' medical records and claim booklets, correspondence, narrative summaries and Respondents' offer amounts. Respondents also argue that § G.4 cannot apply in ADR because that provision, taken literally, would completely preclude any use of a wife's claim file in a husband's ADR proceedings.

Respondents' position is wholly unpersuasive. The CRF confidentiality provision reads, in full: "Claim files and all communications between the Trust and a claimant or between the Trust and any other person about any claimant are in the nature of set-

---

6. This double causation rule is now set forth in the Second Amended ADR Rules. *See* Second Amended ADR Rule 12.H.2.

tlement discussions and shall be strictly confidential." CRF § G.4. In *Dalkon Shield Claimants Trust v. Shear*, Docket No. 16601 (March 29, 1994), the Court addressed the scope of § G.4 and concluded that the provision is significantly more broad than Federal Rule of Evidence 408 in that it proscribes admissibility of voluntary settlement conference information "without restriction by purpose." *Id.* at 5 n. 3. While *Shear* involved a claim that had proceeded to litigation, the Court's interpretation of § G.4 applies with equal force to the admissibility of settlement information in ADR proceedings; indeed, § G.4 is designed to protect the *entire* claims resolution process and, consequently, the group of claimants as a whole. *Welch v. Dalkon Shield Claimants Trust*, 197 B.R. 568, 571 (E.D.Va.1994). Accordingly, the Court holds that a non-user husband seeking damages for loss of consortium in ADR may not attempt to bar the Trust from contesting causation of his wife's injuries by means of any information that relates to the wife's prior settlement offer because such information is inadmissible in ADR proceedings under CRF § G.4.

 This conclusion is complimented and underscored by the principle that causation remains a contestable issue throughout ADR unless waived by the Trust. *Reichel v. Dalkon Shield Claimants Trust*, 197 B.R. 537, 540 (1994); *see also* CRF § G.13 (causation always in issue unless waived by the Trust). Indeed, claimants who choose to submit their claim to an ADR referee are plainly on notice that they are bound by the ADR rules which, *inter alia*, place upon claimants the burden of proving causation. *See* First Amended ADR Rule XII.G.2 (bur-

den of proof rule); Trust Rep.Mem., Ex. A (Respondent's ADR Agreements stating that parties bound by ADR rules); *see also Reichel*, 197 B.R. at 540 (affirming ADR causation rules); *Gunnell v. Dalkon Shield Claimants Trust*, 197 B.R. 533, 536 (E.D.Va.1994) (ADR agreement binding). Finally, causation is a contestable issue in ADR because, at that point, the "playing field" is levelled through a claimants rejection of her Option 3 offer and concomitant submission of her claim to the adversarial ADR process. In other words, upon reaching ADR, voluntary settlement is "no longer a viable option" for a claimant and the Trust is free to contest causation. *See* Mem. in Support of Amend.Admin.Ord. No. 1, Docket No. 11499 at 10 (June 26, 1991) (settlement no longer viable option once plaintiff reaches arbitration).[7]

 Despite these principles, Respondents assert that § G.4 does not apply to ADR. In short, they contend that the Trust's submission of certain information to ADR Referees indicates that § G.4 does not, in fact, apply to ADR. *See supra* note 5 (setting forth information submitted by Trust to Referee). Respondents' argument is not well taken. To begin, if their contention is premised on a notion that the Trust has impliedly waived confidentiality in ADR by engaging in certain conduct, it is meritless as § G.4 cannot be waived by any party in light of the Trust's larger purpose of protecting the group of claimants as a whole. *Welch*, Docket No. 19328 at 7.

Moreover, Respondents overlook the specific ADR rules which permit the Referee to consider evidence "that was before the Trust

7. Respondents argue that the Court's Memorandum in Support of Amended Administrative Order No. 1 suggests that the playing field is only level in arbitration and litigation. *See* Mem. in Support of Amend.Admin.Ord. No. 1, Docket No. 11499 at 7. This argument is entirely disingenuous. To begin, ADR was not included in the portion of the Court's June, 1991 Memorandum reproduced by Respondents because ADR was not approved by the Trustees until February 26, 1992. *See Trustees Approve Alternative Dispute Resolution*, Claims Resolution Report, April, 1992, at 1. Moreover, a closer reading of the language quoted by Respondents reveals that the

Court was concerned with leveling the playing field once voluntary settlement of a claim is no longer an option, rather than specifying the types of alternate claims resolution as the point at which the playing field levels. *See* Mem. in Support of Amend.Admin.Ord. No. 1, Docket No. 11499 at 7 ("upon failure of a settlement") and 10 ("settlement is no longer a viable option"). The underlying principle was that the Trust's policy of encouraging settlement is no longer at issue once a claimant has rejected her offer and proceeded to arbitration or litigation. Plainly, the same rationale applies when a claimant chooses ADR.

at the time of its review of the claim," and any decision and settlement offer extended by the Trust. First Amended ADR Rule XII.F.2.a. & b.[8] Without doubt, the Trust is empowered to consider the contents of a user's claim file when evaluating her non-user husband's claims for loss of consortium damages under Option 3. *See* CRF § E.2 (information in related claims files may be considered by Trust in evaluating a different claim). Indeed, a fair and full evaluation of the husband's claim would simply not be possible without reviewing all information relevant to his claim. For the same reason, the ADR rules cited above permit the Referee to consider, without violating confidentiality, the same information in the ADR process. Surely, common sense dictates that such information *must* be available to the Referee in order to ensure the full, fair and expedient evaluation of a claim. Allowing the introduction of certain evidence in ADR does not render § G.4 impotent; to the contrary, the ADR evidentiary rule and § G.4 combine to guarantee a full and fair ADR hearing, and preserve ADR's status as a workable alternative to litigation or arbitration.

■■■ In summary, the Court concludes that the Trust may not contest causation in the instant matter owing to its admissions in the Statements of Facts and Issues submitted to the ADR Referee. As a general principle, however, the Trust is fully empowered to challenge causation of a wife's injuries in her husband's ADR proceedings, and the husband is barred by § G.4 from introducing his wife's previous settlement as evidence of any element of his claim.[9]

### III.

■■■ The Trust also moves the Court to rule that costs cannot be assessed against the Trust where an ADR referee continues the proceedings on the basis that a claimant raises matters within the exclusive jurisdiction of this Court. The Trust argues that the imposition of costs would, in effect, punish the Trust for attempting to enforce this Court's exclusive jurisdiction. Respondents disagree, arguing, *inter alia,* that the costs assessed by the Referee were proper under Rule X of the First Amended Rules of Arbitration.[10]

The parties submit lengthy chronologies of the events giving rise to this matter, and trade various accusations regarding responsibility for the continuance. The Court, however, is not willing to allow these factors to

---

8. The ADR rule permitting the Referee to consider any Trust decision and settlement offer plainly states that "the decision and offer constitute a settlement offer and shall not be deemed an admission of liability." First Amended ADR Rule XII.F.2.b.

9. Respondents further two additional arguments. First, they allege the Trust may not contest causation of a wife's injuries in her husband's ADR proceedings because the General Release signed by the wife when she settled her claim prohibits her from aiding her husband's claim (i.e., through *testimony* or submission of her medical records). *See supra* note 2 (setting forth General Release). Second, they contend that CRF § A suggests that a settlement offer to a wife is an admission of liability and that the Trust may not, in her husband's ADR proceeding, contest causation.

These arguments are unpersuasive. To begin, the Trust concedes that it has "never considered" the subject provision of the General Release to restrict a wife from aiding a related claim filed by her husband; rather, it is designed to "restrict the wife from continuing her own claims against the Trust." Trust Rep.Mem. at 8. As regards Respondents' latter argument, it is well established that settlements are not admissible as admissions of liability. *See* Federal Rule of Evidence 408. Moreover, the Court reiterates it's conclusion in *Shear:* § G.4 is even more broad than Rule 408 in that there is no restriction as to purpose. *Shear,* Docket No. 16601.

10. Rule X reads as follows:

**X. CONTINUANCES**

As a general rule, referees should resist continuances. More than one continuance of an ADR hearing on the motion of a party is prohibited, and no continuance will be granted after the time of the final pre-hearing conference, except upon a strong showing of necessity or extreme circumstances. In addition, the Bankruptcy Court shall have the power to stay any ADR proceeding upon a showing by the Trust of undue prejudice due to the multiplicity of ongoing, pending or scheduled trials, arbitration hearings or ADR hearings. If any continuance or stay is granted, the requesting party shall reimburse the other party for all non-refundable travel expenses, upon proof thereof, incurred to date.

First Amended ADR Rule X. This rule has been amended. *See Second Amended ADR Rule* XII. H.2.

obscure what it considers to be a clearly defined issue. While it is true that the Referee faced a situation in which a continuance was necessitated by the invocation of this Court's exclusive jurisdiction,[11] it is equally true that the Referee's conduct was governed by the applicable ADR Rules. The ADR rules at issue plainly reveal that the *only* authority pursuant to which the Referee could have continued the hearings is Rule X. Likewise, Rule X is the only authority permitting the Referee to assess non-refundable expenses against the Trust as the requesting party. *Id.*

Nevertheless, the Trust argues that this rule should not apply where a continuance is granted on the basis that this Court's exclusive jurisdiction has been invoked. The Trust's position, however, overlooks the last sentence of Amended ADR Rule X which is plainly designed to protect parties who assume expenses associated with appearing at an ADR hearing which is subsequently continued or stayed, for whatever reason, at the request of the other party. While the instant matter may not be the premiere example of this principle at work, there may be future instances in which this Court's exclusive jurisdiction is invoked the day of the ADR hearing. In such a case, it would be manifestly unfair for a claimant who has incurred travel expenses to suffer the consequences of a rule similar to that proposed by the Trust. Indeed, there is little doubt that the Trust would wish to be afforded the same protection if the tables were turned. Finally, the Court is mindful that the setting of ADR rules is a day-to-day matter with which this Court ordinarily will not interfere, *Gunnell,* 197 B.R. at 536; thus, the Court is unwilling to carve out the large exception to Amended ADR Rule X suggested by the Trust. Accordingly, the Court declines to hold that the Trust is immune from reimbursement obligations whenever an ADR hearing is continued based on invocation of this Court's jurisdiction.

The Trust further argues that the Referee's power to continue the hearings was not grounded in Rule X, but in an unwritten obligation to order a continuance based on the Referee's lack of jurisdiction. As evidence of its belief that such an obligation exists, the Trust notes that it did not mention Rule X during its June 16, 1994 conference call with Respondents and the Referee. The Trust's argument is unpersuasive. To begin, it bears repeating that any authority for a Referee to continue an ADR hearing, whatever the basis, must emanate from the ADR rules, and Rule X is the only applicable rule. Moreover, the Trust's argument ignores the policy embodied in Rule X to protect non-requesting parties from being saddled with expenses when a continuance or stay is granted. In short, Rule X provided the authority for the Referee's actions, and the fact that the Trust never invoked this rule during the conference call is inapposite.

Finally, the Trust argues that Respondents waived the right to recover costs when their counsel failed to raise the issue during the conference call with the Referee. This argument fails to account for the complete absence of any requirement in Rule X that the party to be reimbursed make such a request of the Referee; rather, the rule simply directs that "the requesting party shall reimburse the other party." First Amended ADR Rule X. Pursuant to this Rule, the Referee's order gave Respondents until June 21, 1994, to submit a statement of non-refundable costs. Respondents complied with that order and are, consequently, entitled to relief.

Thus, the Court concludes that costs should be levied against the requesting party, in accordance with First Amended ADR Rule X, where a continuance of an ADR proceeding is ordered on the basis that this Court's exclusive jurisdiction has been invoked. At the same time, however, it is imperative that a determination be made that the expenses claimed are reasonable under the circumstances. While the First Amend-

---

11. A review of the record reveals that, by the time of the conference call, there was a clear-cut dispute over the meaning and effect of CRF § G.4. Such a disagreement is surely a matter falling within this Court's exclusive jurisdiction. *See Dalkon Shield Claimants Trust v. Porter-Cooper,* Docket No. 15972 ¶ 7 (November 2, 1993).

ed ADR Rules do not contain a reasonableness requirement,[12] the Court determines that any other conclusion would run contrary to the Trust's ultimate goal of fully, fairly and expeditiously satisfying all Dalkon Shield claims. *Besag v. Dalkon Shield Claimants Trust,* 197 B.R. 590, 596 (E.D.Va.1994).

■ In the instant matter, a review of the expenses submitted by Respondents reveals that there may well be a question as to whether Respondents' reimbursement requests, which cover costs incurred over four and five-day periods, are reasonable, especially in light of the fact that an ADR hearing is scheduled to last only two and one-half hours. *See supra* note 5 (summary of expenses claimed). Accordingly, the Court directs the Referee to examine the expenses submitted by Respondents, prior to any assessment against the Trust, to determine whether such expenses are, in fact, reasonable. In so doing, the Referee should consider not only the expenses themselves, but the surrounding circumstances, including any opportunity that Respondents had to mitigate or avoid any expenditure. If the Referee determines that such expenses are not, in fact, reasonable, she is further directed to reduce any subsequent assessment against the Trust accordingly.

### IV.

In summary, the Trust has asked this Court to determine (1) whether the Trust may contest causation of a user's alleged injuries in her husband's ADR proceeding where the wife has previously settled her claim; (2) whether such settlement is admissible in the husband's ADR proceeding as evidence of any element of his claim; and (3) whether an ADR claimant's travel expenses can be levied against the Trust where an ADR hearing was continued because issues within this Court's exclusive jurisdiction have been raised. For the reasons set forth above, the Court answers the first question in the affirmative, the second question in the negative and the third in the affirmative.

An appropriate Order shall issue.

*ORDER*

This matter is before the Court on the Dalkon Shield Claimants Trust's ("Trust") motion to interpret, in part, the Sixth Amended and Restated Plan of Reorganization of the A.H. Robins Company ("Plan") and the related documents under which the Robins Bankruptcy is being managed.

Upon due consideration, for the reasons stated in the accompanying memorandum this date filed and deeming it just and proper so to do, it is ADJUDGED and ORDERED that (1) the Trust, in an ADR proceeding brought by a husband of a woman who has previously settled her Dalkon Shield Claim with the Trust, may contest whether the Dalkon Shield caused the wife's injuries; (2) any information regarding the prior settlement of the wife's claim is "in the nature of settlement discussions," protected by Claims Resolution Facility § G.4 and, consequently, not admissible in the husband's ADR proceeding as evidence of any element of his claim; and (3) where an ADR hearing is continued because matters within this Court's jurisdiction have been raised, the requesting party, in accordance with the applicable ADR rules, must reimburse the other party's reasonable travel expenses.

IT IS FURTHER ORDERED that the ADR Referee in the instant matter, prior to assessing any costs against the Trust, make a determination as to whether the expenses claimed by Respondents are reasonable under all the circumstances. If the Referee concludes that such expenses are not, in fact, reasonable, she must reduce any subsequent assessment against the Trust accordingly.

---

**12.** The Second Amended rules, however, authorize a referee to order the moving party "to pay reasonable costs incurred by the inconvenienced party." Second Amended ADR Rule 10.A.