**In re A.H. ROBINS COMPANY, INC., Debtor, Employer Tax Identification No. 54–0486348.**

**DALKON SHIELD CLAIMANTS TRUST, Movant,**

v.

**Jane FINKEL and Martin Finkel, Respondents.**

**No. 84–01307–R.**

United States District Court, E.D. Virginia, Richmond Division.

March 2, 1994.

Patricia Jo Stone, Lakewood, Colorado, for Jane Finkel and Martin Finkel.

Orran Lee Brown, Richmond, Virginia, for Dalkon Shield Claimants Trust.

### MEMORANDUM

MERHIGE, District Judge.

This matter is before the Court on motion by the Dalkon Shield Claimants Trust ("Trust") seeking an interpretation of a portion of the A.H. Robins bankruptcy reorganization plan ("Plan") and an order thereof. Certain claimants [1] responded in opposition

---

1. Dalkon Shield Claimant Allyne Jacocks, DS–75909, moved on April 26, 1993, to intervene in this matter, and moved to withdraw on May 18, 1993. On May 11, 1993, Claimant Shirley Lou Harmon–Maze, DS–77544 filed a motion to interpret the Plan, which this Court treated as a motion to intervene. This Court subsequently granted Claimant Harmon–Maze's motion to

to the motion, and the Court held oral hearing on July 6, 1993. With this Memorandum and accompanying Order, the Court interprets the Plan as to the issues raised in the Trust's motion.

This Court retains exclusive jurisdiction to resolve disputes and controversies regarding the interpretation and implementation of the Plan, the Dalkon Shield Claimants Trust Agreement ("Agreement"), the Trust Claims Resolution Facility ("CRF"), and related instruments, and this Court retains exclusive jurisdiction to enter orders in aid of the Plan. Debtor's Sixth Amended and restated Plan of Reorganization (*Plan*) § 8.05 (March 28, 1988) (in *In re A.H. Robins Co., Inc.*, No. 85–01307–R (E.D.Va.)); Order Confirming *Plan* ¶ 45 (July 26, 1988) (in *In re A.H. Robins Co., Inc.*, No. 85–01307–R (E.D.Va.)) (accompanying Memorandum at 88 B.R. 742 (E.D.Va.1988)); Amended Administrative Order Number 1 Governing Dalkon Shield Arbitration and Litigation ¶ 3 (July 1, 1991) (in *In re A.H. Robins Co., Inc.*, No. 85–01307–R (E.D.Va.)) (confirmed in *In re A.H. Robins Co. (Dalkon Shield Claimants Trust v. Reiser)*, 972 F.2d 77, 79 n. 1 (4th Cir.1992)). The Trust's motion arises from a dispute during arbitration between the Trust and Claimants Jane and Martin Finkel, and concerns the meaning of language in the CRF and its implementing rules. This dispute concerns the meaning and implementation of the CRF and is within this Court's exclusive jurisdiction.

The Trust moves the Court to interpret the CRF provisions and related rules governing arbitration of Dalkon Shield claims. Specifically, the Trust asks the Court to determine two issues:

(1) Whether in arbitration using the Alternate Decision Method (ADM) the arbitrator has authority to reject both the final Trust offer and the final claimant demand in favor of an award of zero dollars; and

(2) Whether in any arbitration the Trust has authority to contest causation.

withdraw. The remaining claimants in opposition are Jane Finkel, DS–199780, and Martin Finkel, DS–27471.

Determination of these issues requires the Court to interpret provisions of the CRF and of the Trust's Rules Governing Regular Arbitration ("Rules").[2] The pertinent CRF section states:

(a) *Binding Arbitration....* The issue to be arbitrated is the amount, *if any,* at which the claim should be allowed. In Binding Arbitration, the arbitrator will consider the record available in the in-depth review; the decision and offer of the Trust and the claimant; any evidence offered, including expert testimony concerning causation; evidence offered by either party as a result of medical examinations, tests or other procedures requested by the Trust; and arguments of the claimant and the Trust....

... In Binding Arbitration, *all available defenses may be asserted by the Trust, other than absence of product defect....*

In the event that both the Trust and the claimant agree, the arbitrator, instead of independently determining the amount of the award, *shall select either the amount demanded by the claimant in the final Option 3 proposal or the amount offered by the Trust in the final Option 3 proposal, and no other amount shall be selected.*

Dalkon Shield Trust Claims Resolution Facility (*CRF*), § E.5(a) (found at Appendix C of *Plan*) (emphasis added). The Trust's rules governing arbitration state:

2. At the request of both the trust and the claimant, the arbitrator, instead of independently determining the award, *shall select either the amount demanded by the claimant in the final Option 3 proposal or the amount offered by the Trust in the final Option 3 proposal, and no other amount shall be selected.* The arbitrator shall determine the award using this method only if both parties agreed to this in the Arbitration Agreement. If both parties agree to this method of determining the award, the respective amounts will be specified in the Arbitration Agreement.

2. The Trust promulgates rules implementing the Plan and the CRF pursuant to its authority under § 4.03(b)(xii) of the Claimants Trust Agreement, at Appendix A of the Plan.

Rules Governing Regular Arbitration (*Rules*) § XIII.B.2 (July 2, 1991) (emphasis added). The Rules also state: "*All available defenses may be asserted by the Trust, other than absence of product defect.*" *Id.* § XII.G (emphasis added).

■ The first issue raised by the Trust concerns the number of possible award amounts available to the arbitrator in ADM. The Trust contends that the arbitrator may choose from among three possibilities: the Trust's final settlement offer, the claimant's final settlement demand, and zero.

The Trust argues that the language in the CRF and Rules specifying two and only two choices—the final offer and final demand— presupposes a determination that the Trust is liable to the claimant. The Trust argues that in any arbitration, including ADR, it may challenge liability, and the arbitrator may make a finding of no liability. Therefore, the Trust argues, the offer and demand amounts are the arbitrator's only choices *if and only if* the arbitrator first finds that the Trust is liable to the claimant. If the arbitrator finds no liability, the award amount is zero. The Trust points to the CRF language, "the amount, if any," in support of its argument. *See CRF* § E.5(a).

Claimants Jane and Martin Finkel respond in opposition arguing that the language of the CRF and Rules means that only two outcomes are possible in ADR: an award in the amount of the Trust's final offer, or an award in the amount of the claimant's final demand. Claimants contend that once the parties have agreed to ADM, the Trust may not seek, and the arbitrator may not award, an amount different from either the final offer or the final demand. Claimants offer in support of their position the language of the CRF and Rules stating that the arbitrator in ADM "shall select either" the final offer or final demand, "and no other amount shall be selected." *Id.; Rules* § XIII.B.2.

The Court finds that the Trust's position is correct. Liability must be established before damages are calculated. Under Claimant's theory there would be no incentive for claimants to accept Option 3 offers. Further, in the view of the Court, "zero" can hardly be designated as an amount. Indeed, it represents nothing—it is naught. In the context in which it is used in the CRF, it is an award representing no recovery.

The Court notes that when this dispute first arose, the Trust acted promptly to clarify the language in its arbitration contract. That contract now clearly requires the Claimant and the Trust to agree that a zero award is possible. As a result, now only the Finkels can make a good faith claim to have suffered from any ambiguity regarding the ADR rules. The Court notes further that because of their special circumstances, the Trust could allow the Finkels to revoke their ADR election without significant prejudice to the Trust and without violating the Trust's longstanding "no negotiation" policy.[3]

■ The second issue raised by the Trust concerns its authority to challenge causation in arbitration. The CRF section on arbitration states that "all available defenses may be asserted by the Trust, other than absence of product defect." *CRF* § E.5(a). The same provision appears verbatim in the Rules. *Rules* § XII.G (same). The section of general guidelines in the CRF provides that "[c]ausation will be in issue except as waived by the Trust." *CRF* § G.13. The Trust contends that these provisions expressly give it authority to challenge causation in any type of arbitration.

Claimants respond that the Trust's authority to challenge causation is limited by another provision of the CRF. Section G.12 of the CRF provides that except at trial, "product defect, including but not limited to design and warning defect, is not to be contested by the Trust and shall not be the subject of proof." Claimants contend that this prohibition on contesting product defect also prohibits its denying that the Dalkon Shield defect caused a particular type of injury. Claim-

---

**3.** The Court's suggestion is not to be interpreted as anything more than what it is labeled—a suggestion. This is especially so since the Court is without authority in the circumstances of this case to do more. The Court's suggestion is prompted by the fact that, through no fault of the Trust, confusion arose in reference to a claim of Shirley Lou Harmon–Maze, a former intervenor in this cause, whose motion to intervene was withdrawn by Order of this Court and who was dismissed as a party herein.

ants contend that because the Trust may not deny that the Dalkon Shield is a defective product, unreasonably dangerous and harmful to ordinary consumers, "the Trust may not assert that the Dalkon Shield does not cause the types of injuries which are claimed to have resulted from use of the Dalkon Shield IUD." Jane and Martin Finkel's Proposed Findings of Fact and Conclusions of Law, 5.

The Court finds that Claimants' position is contrary to the plain meaning of the CRF, which states that causation is in issue unless waived by the Trust, *CRF* § G.13, and that the Trust may assert any defense in arbitration except absence of product defect. *CRF* § E.5(a); *see also Rules* § XII.G. It is elementary that product defect and causation are distinct. The most defective and dangerous product imaginable is not necessarily the cause of a particular harm to a particular user. The Trust may challenge causation in any arbitration unless it waives the right to do so.

In summary, the Court determines that in ADM arbitration the possible outcomes are three: (1) the Trust's final offer; (2) the claimant's final demand; and (3) no liability. The Court also determines that the Trust has authority to challenge causation in any arbitration unless it waives that authority.