**In re A.H. ROBINS COMPANY, INCORPORATED, Debtor, Employer's Tax Identification No. 54–0486348.**

**Catherine TROUTT, by her next friend and mother, Eloise MILLSPAUGH, Movant,**

**v.**

**DALKON SHIELD CLAIMANTS TRUST, Respondent.**

**No. 85–01307–R.**

United States District Court, E.D. Virginia, Richmond Division.

Dec. 20, 1994.

Stephen W. Bricker, Stephen W. Bricker & Associates, Richmond, Virginia, (David W. Morris, Stephen W. Bricker & Associates, on the briefs), *for Catherine Troutt.*

Orran Lee Brown, Richmond, Virginia, for Dalkon Shield Claimants Trust.

## *MEMORANDUM*

MERHIGE, District Judge, and BLACKWELL N. SHELLEY, Bankruptcy Judge.

This matter is before the Court on Movant's motion to interpret, in part, the Sixth Amended and Restated Plan of Reorganization of the A.H. Robins Company ("Plan") and the related documents under which the A.H. Robins Company bankruptcy is being managed. The Court will grant the Movant's motion and issues its interpretation in this Memorandum.

### I.

Movant is the twenty year old child of Dalkon Shield user Eloise Millspaugh. While not born prematurely, Movant suffers from various neurological handicaps, including mental retardation and a seizure disorder, which are apparently congenital or birth defect injuries. *See* Claims Resolution Facility ("CRF") Exh. A.[1] Movant and her mother have both filed claims with the Trust and have elected to proceed under Option 3 of the CRF.

Millspaugh undeniably had a Dalkon Shield inserted on August 9, 1972, by Dr. Patricia Smith of El Dorado, Illinois. As the basis of her claim, Movant asserts that the Shield was in place at the time of conception and that she thus has a compensable "*congenital or a birth defect injury in a child born to a mother who had a Shield in place at the*

---

1. The parties agree that Exhibit A of the Claims Resolution Facility ("CRF") lists common injuries associated with Dalkon Shield use. One such category of injuries is entitled "Child of User Claims," and reads as follows:

    A birth injury resulting from premature of otherwise abnormal birth to a child born to a mother who had a Shield in place at some time during her pregnancy with the child and who delivered the child prematurely.

    A congenital or a birth defect injury in a child born to a mother who had a Shield in place at the time of conception.
    Economic injury to the child resulting from either claim described immediately above, in the nature of
    —medical expenses
    —wage losses
    *See* CRF Exh. A.

time of conception." CRF Exh. A.[2] It is undisputed, however, that Dr. Smith's records, which include the period of conception through birth, do not "mention the presence of a Dalkon Shield, its removal, or any problems relating to it." Response Memorandum ¶ 10 at 3. The same dearth of objective medical evidence exists in the relevant hospital records.[3]

Movant attributes this lack of contemporaneous medical evidence to incomplete record keeping by Smith.[4] In an attempt to fill this void, Movant submitted an alleged "affidavit" from Dr. Smith stating that "Ms. Millspaugh conceived while using the Dalkon Shield and carried her pregnancy with the IUD in utero." Movant's Memorandum, Exh. 2. Movant also submitted a "Personal Narrative" of Millspaugh in which Millspaugh suggests that she conceived with the Shield in place. *Id.* at Exh. 3. Neither of these documents is sworn to or notarized.

Despite these additional submissions, the Trust, based largely upon the absence of contemporaneous medical record evidence of Dalkon Shield use at conception, concluded that there was insufficient proof of that issue and consequently extended Movant a minimal offer of compensation. Movant rejected this offer and has sought re-review of her claim. Movant states that if she is dissatis-

fied with the amount of the re-review offer, she "wishes to appeal her case to regular arbitration." Movant's Memorandum at 3. In the meantime, she moves the Court to interpret the Plan and related documents in the following manner:

> [T]hat should [Movant] hereafter elect to proceed to regular arbitration, the arbitration rules and CRF § G.2 are interpreted to require that the Trust rebuttably presume that the injuries listed in CRF Exhibit A are caused by the Dalkon Shield but further holding that the Trust in any proceeding in regular arbitration as to [Movant's] claim is not prohibited from offering otherwise admissible evidence to rebut the presumption of causation.

*Id.* at 4.

In her memorandum, Movant asserts that the Plan and CRF should be interpreted to include a rebuttable presumption of causation in regular arbitration. She grounds this argument, in part, upon her analysis of CRF § G.2 and the general principles set forth in CRF §§ A(3) and (4). Specifically, Movant asserts that sections A(3) and (4) indicate that the Trust will compensate a claimant only when he or she is injured by the Dalkon Shield. She further maintains that since CRF Exhibit A injuries are presumed to be eligible for compensation, and since the Trust

---

**2.** The Trust states that the Movant's April, 1974, birth date and the typical thirty-eight to forty-two week gestation period indicate that conception probably occurred in July, 1973.

**3.** The parties have stipulated to the following facts, as set forth in the Trust's memorandum and as modified at oral argument:

(1) The excerpts from Dr. Smith's records Troutt attached as Exhibit 1 to her Brief show the Dalkon Shield insertion on August 9, 1972. They reflect examinations and tests in January, and February, 1973. They also show an x-ray on March 27, 1973, that detected the IUD in place at that time.
(2) Dr. Smith's medical records also reflect that Millspaugh saw her on October 16, 1973, and was determined to be pregnant. [One] record indicates a history of birth defects and mental retardation in Troutt's parents' families. There is no mention of a Dalkon Shield being present.
(3) Dr. Smith's records show office visits by Millspaugh on October 16, November 15, and November 27, 1973, and on January 3, Febru-

ary 12, March 4, and March 13, 1974, for prenatal care. On each visit, Dr. Smith recorded in her records Millspaugh's blood pressure, weight, temperature, and other observations. She noted nothing about a Dalkon Shield.
(4) The Pearce Hospital records detail the labor and delivery, including an x-ray of Millspaugh before the delivery that showed the position of the fetus. The x-ray [report] did not [record the finding of] a Dalkon Shield. After the delivery, Millspaugh had surgery at the hospital, a salpingostomy (incisions to her fallopian tubes) and an appendectomy. None of these detailed records—of the delivery, labor, surgeries, recovery, and pathology studies of tissue—say anything about the Dalkon Shield being present, being seen upon delivery, or causing any complications.
Response Memorandum ¶¶ 11–14, at 3–4.

**4.** In this regard, Movant somehow reasons that the combination of Smith's rural medical practice and the fact that Smith is a general practitioner, not an obstetrician, precipitated the generation of deficient records.

only compensates a claimant when he or she is injured by the Dalkon Shield, there must be a presumption of causation for the injuries listed in CRF Exhibit A. The only authority for such a presumption, the Movant suggests, is CRF § G.2, which Movant interprets as including a causation presumption. In this vein, the Movant also suggests that since CRF § G is entitled "Guidelines," the subsections of section G, including § G.2, apply to the entire claims resolution process, including regular arbitration. Finally, Movant combines the language of CRF § E.5(a) that provides for the preservation of defenses in arbitration [5] with the silence of the arbitration rules 'on the causation burden and argues that causation is only to be used as an "affirmative defense" in arbitration. *See* Movant's Memorandum at 17.

## II.

Movant has properly brought this motion to interpret the Plan and related documents in this Court. Indeed, it is well settled that this Court has retained the exclusive jurisdiction to interpret the instruments governing the Trust and address matters such as those raised in Movant's motion. *See* Debtor's Sixth Amended and Restated Plan of Reorganization § 8.05, March 28, 1988, *confirmed by In re A.H. Robins Co.*, 88 B.R. 742 (E.D.Va.1988), *aff'd* 880 F.2d 694 (4th Cir. 1989), *cert. denied* 493 U.S. 959, 110 S.Ct. 376, 107 L.Ed.2d 362 (1989); Amended Administrative Order No. 1 ¶ 3, *In re A.H. Robins Co.*, Docket No. 11499 (E.D.Va. nunc pro tunc June 26, 1991) *aff'd* 42 F.3d 870 (4th Cir.1994); *see also In re A.H. Robins Co., Inc.*, 972 F.2d 77 n. 1 (4th Cir.1992) (affirming the Court's exclusive jurisdiction).

The Court disagrees with Movant's suggested interpretation of the Plan, the CRF

and the arbitration rules. Section G.2 reads as follows:

> 2. *Scheduled Compensable Claims.* In determining whether an injury could have been caused by the Dalkon Shield and, therefore, could be eligible for compensation, the Trust shall presume that the injuries listed in Exhibit A are eligible for compensation. The Trust shall consider on a case by case basis whether any injury not in Exhibit A is eligible for compensation.

CRF § G.2. The plain meaning of this provision indicates that the section is applicable only when the Trust is making its initial evaluation as to a claimant's eligibility for compensation. Section G.2 clearly indicates that while the Trust must presume compensation eligibility when a claimant possesses Exhibit A injuries, causation remains an open issue.[6] Indeed, the introductory clause manifestly reflects this conclusion: "In determining whether an injury *could have* been caused by the Dalkon Shield...." CRF § G.2. Furthermore, it is noteworthy that this provision is specifically directed at the *Trust*, not at any third-party such as an arbitrator.

Aside from the plain meaning of section G.2, there are various other considerations supporting the Court's interpretation of that section. To begin, Section G.2 represents an effort to expedite the claims resolution process when a claimant suffers from Exhibit A "gateway" injuries. In this respect, the section is in full accord with the overall Trust goal of satisfying "as fully, fairly and expeditiously as practicable" all Dalkon Shield claims. Claimants Trust Agreement § 2.02. Moreover, this holding rightfully contributes to the levelling of the playing field in arbitra-

---

**5.** The portions of section E.5 cited by Movant read, in part:

> 5. *Voluntary Binding Arbitration or Trial*
> \* \* \* \* \* \*
> (a) *Binding Arbitration*
> \* \* \* \* \* \*
> The issue to be arbitrated is the amount, if any, at which the claim should be allowed.
> \* \* \* \* \* \*
> In Binding Arbitration, all available defenses may be asserted by the Trust, other than absence of product defect.

CRF § E.5(a).

**6.** The Court also agrees with the Trust that CRF § A in no way suggests that causation must be presumed throughout the claims resolution process, and the Court declines to broaden the unambiguous language of that section, which merely outlines the purposes of the CRF and the methods to attain that purpose.

tion after it has been tilted in favor of the claimant throughout the voluntary settlement phase of claims resolution where certain procedures actively encourage settlement over the more costly and time consuming avenues of arbitration and trial. *See* Amended Administrative Order No. 1 Memorandum Opinion, Docket No. 11499 (nunc pro tunc June 26, 1991) at 10, *aff'd* 42 F.3d 870 (4th Cir. 1994). Finally, as the Trust correctly notes, leaving causation an open issue for the claimant to prove is consistent with basic tort doctrine. *See Kidd v. Dalkon Shield Claimants Trust,* 197 B.R. 597 (E.D.Va.1994) (acknowledging and adhering to general tort principles).

The Court's interpretation of section G.2 is buttressed by CRF § G.13. This section provides that "[c]ausation will be in issue except as waived by the Trust." CRF § G.13. Section G.13 undoubtedly reflects the intention that causation is to be a contested matter, not presumed, and that the claimant bears the burden of establishing causation. Indeed, if the drafters intended for the Trust to bear the causation burden, they would not have vested the Trust with the discretion to waive causation. Moreover, the Court has expressly acknowledged the ability of the Trust to challenge causation in the face of a claimant's allegation that "the Trust may not assert that the Dalkon Shield does not cause the types of injuries which are claimed." *Dalkon Shield Claimants Trust v. Finkel,* 197 B.R. 513, 516 (E.D.Va.1994). In *Finkel,* the Court concluded that "[t]he Trust may challenge causation in any arbitration unless it waives the right to do so." *Id.* In so holding, the Court clearly implied that once the Trust contested causation it was up to the Finkel's to prove its existence.

Likewise, the Court is unpersuaded by Movant's argument under § E.5(a) and the arbitration rules. To begin, there is absolutely nothing in the language of § E.5(a) that serves to recharacterize causation as an "affirmative defense." Moreover, the very same factors that contributed to the Court's

conclusion that there is no causation presumption compel the determination that Movant's section E.5(a) argument is as unavailing and implausible as her suggested interpretation of § G.2. The Trust's retained ability to assert during arbitration "all available defenses ... other than the absence of a product defect" merely signifies that ordinary defenses, such as the statute of limitations, need not be conceded in arbitration. *See* CRF § E.5(b); Rules Governing Regular Arbitration § XII.G.

■ Accordingly, the Court holds that the claimant bears the burden of proving causation by a preponderance of the evidence during arbitration, unless the Trust chooses to waive the issue. A contrary holding would run afoul of the plain meaning and underlying policies of the Plan and related documents, former opinions of this Court and common law tort doctrine.[7]

### III.

■ Movant's motion is also premised on equitable grounds. Movant asserts that arbitration will not be a "meaningful avenue of appeal" because the existing state of medical knowledge only makes it possible to determine the cause of fetal brain defects in ten-percent of such cases; thus, she argues that it will be impossible to prove causation during an arbitration proceeding which, in turn, will prevent her from being compensated for her injuries. In support of this proposition, she cites the medical information contained in an unsworn "affidavit" of Dr. Kevin Farrell, a Canadian medical professor certified in both pediatrics and neurology. In a closely related argument, Movant asserts that she is the intended beneficiary of a "deal" struck between Robins, Mr. Joseph Friedberg and other representatives of handicapped children pursuant to which a presumption of causation was supposedly included in the Plan. Movant's Memorandum at 13–14. According to Movant, Mr. Friedberg and others successfully obtained Robins' ac-

---

7. This holding is substantially in accord with the Court's recent decision in *Reichel v. Dalkon Shield Claimant's Trust,* 197 B.R. 537 (E.D.Va.

1994), in which the Court rejected a claim that a presumption of causation applied in Alternative Dispute Resolution.

quiescence to this "deal," in part, because of the state of the medical evidence set forth above.[8]

These arguments do not persuade the Court that an interpretation of the Plan and CRF different from that set out above is warranted. As for the alleged Friedberg "deal," the Court seriously questions the veracity of this bold allegation. To begin, Mr. Friedberg has never been considered by this Court to be a spokesman for the Trust, Robins or anyone else other than the numerous claimants whom he has represented. Moreover, as the Trust correctly argues, the Plan and related documents were the result of an extensive negotiation and drafting process involving scores of individuals. It is ludicrous for one individual involved in this process to claim an alleged group intention to require a presumption of causation in arbitration, especially when that individual's role in the process was apparently limited to representing only one segment of the claimant population. Thus, the Court places no weight on Movant's claim that Friedberg and others were "able to convince Robins from the very first proposed plan of reorganization to include the present presumption of causation." Movant's Memorandum at 14.

The "affidavit" of Dr. Farrell, on the other hand, is a more relevant piece of evidence in general support of Movant's claim. At the same time, however, it is *not* useful in resolving whether or not the Plan or the CRF require a presumption of causation in arbitration. The fact that a claimant suffers from an injury, the source of which medical science cannot determine with pinpoint accuracy, does not suggest that the Court must read a presumption of causation into the Plan and CRF. Indeed, the Court, after careful consideration, has reached the opposite conclusion for sound and practical reasons.

This does not necessarily mean, however, that Movant is foreclosed from using the Farrell statement to prove her claim during an arbitration hearing. Arbitration is a dispute resolution mechanism in which a claimant, within the bounds of the arbitration rules and applicable law, may present to the arbitrator evidence in support of his or her claim. In Movant's case, this *may* include, *inter alia,* Millspaugh's personal statement, the statement of Dr. Smith, the statement of Dr. Farrell and the circumstantial evidence of Movant's alleged exposure to Dalkon Shield-related infection, as set forth in footnote four of her brief. Consequently, the Court concludes that Movant will have a full and fair opportunity to argue her claim to an arbitrator should she pursue that avenue of claims resolution.

## IV.

▮ It is true that this decision may unfavorably impact some individual claimants. The Court, however, is obligated to consider the group of claimants and the Trust's larger purpose of fully, fairly and expeditiously resolving all Dalkon Shield claims. Where a Trust procedure creates a conflict between the claimant group as a whole and an individual claimant, the Court will not disturb the procedure where the unfairness accruing to the individual is "absolutely unavoidable given [the Trust's] larger purpose." *Besag v. Dalkon Shield Claimants Trust,* 197 B.R. 590, 597 (E.D.Va.1994). For the reasons set forth in sections II and III of this Memorandum, the Court concludes that placing the burden of proving causation on the claimant throughout the claims resolution process, including regular arbitration, is absolutely necessary to attain the larger purpose of fully, fairly and expeditiously resolving all Dalkon Shield claims. Accordingly, the Court reiterates its holding that causation remains a contestable issue in arbitration and that the claimant bears the burden of proof on that issue.

---

8. At oral argument, Movant's counsel noted that employing the term "deal" may have been careless diction.