In re A.H. ROBINS COMPANY, INCOR-
PORATED, Debtor, Employer's Tax
Identification No. 54–0486348.

DALKON SHIELD CLAIMANTS
TRUST, Movant,

v.

Gale MacLEOD et al., Respondents.

No. 85–01307–R.

United States District Court,
E.D. Virginia,
Richmond Division.

June 30, 1995.

Robert S. Sola, Williams & Troutwine, P.C., Portland, Oregon (Michael L. Williams, Williams & Troutwine, P.C., on the briefs), for Gale MacLeod, Mary Pochert, Marlynne Mahlik, Carolyn McClure, Anne Campbell, Katharine Cramer, Cynthia Russell, Dolores Barrow, June Briggs, Lisa Plunkett, Jennifer Drews, Sharon Mahler, Beverly Hames, Betty McAllister, Cheryl Edwards and Victoria Negron.

Dennis E. Simmons, Law Offices of Thomas J. Brandi, San Francisco, California (Thomas J. Brandi, Mylene L. Reuvekamp, Law Offices of Thomas J. Brandi, on the briefs), for Linda Knott, Pamela Waysack, Janette Holcomb and Sandra Weiland.

Jeffrey P. Holl, Walkup, Melodia, Kelly & Echeverria, San Francisco, California, for Edith Hutto and Barbara Wyatt.

Thomas J. Knight, Knight & Nichols, Anniston, Alabama, for Sharon Gravitt and Jeffrey Gravitt.

Orran Lee Brown, Richmond, Virginia, for Dalkon Shield Claimants Trust.

## *MEMORANDUM*

MERHIGE, District Judge.

This matter is before the Court on the Dalkon Shield Claimants Trust's ("Trust") motion to interpret the Sixth Amended and Restated Plan of Reorganization of the A.H. Robins Company ("Robins") ("Plan"), the related documents under which the Robins Bankruptcy is being managed and Amended Administrative Order Number One ("Administrative Order"). This Court retains the exclusive jurisdiction to address such motions.[1]

### I.

This matter arises from the remand of, or the filing of remand motions in, nine Dalkon Shield suits that were originally filed in state court (after the respective claimants were certified to proceed with litigation under § E.5 of the Claims Resolution Facility ("CRF")) and thereafter removed by the Trust. The Trust removed each of these actions on the basis of federal bankruptcy jurisdiction, *see* 28 U.S.C. §§ 1334(b) & 1452(a), and diversity of citizenship, *see* 28 U.S.C. §§ 1332 & 1441(a).[2]

---

1. *See* Debtor's Sixth Amended and Restated Plan of Reorganization § 8.05, March 28, 1988, *confirmed by In re A.H. Robins Co.*, 88 B.R. 742 (E.D.Va.1988), *aff'd* 880 F.2d 694 (4th Cir.1989), *cert. denied* 493 U.S. 959, 110 S.Ct. 376, 107 L.Ed.2d 362 (1989); Amended Administrative Order No. 1 ¶ 3, *In re A.H. Robins Co.*, Docket No. 11499 (E.D.Va. *nunc pro tunc* June 26, 1991), *aff'd*, 42 F.3d 870 (4th Cir.1994); *see also In re A.H. Robins Co., Inc. (Dalkon Shield Claimants Trust v. Reiser)*, 972 F.2d 77 n. 1 (4th Cir. 1992) (affirming the Court's exclusive jurisdiction); *Troutt v. Dalkon Shield Claimants Trust*, 197 B.R. 519 (E.D.Va.1994); *Besag v. Dalkon Shield Claimants Trust*, 197 B.R. 590 (E.D.Va. 1994); *Dalkon Shield Claimants Trust v. Shear*, 197 B.R. 556 (E.D.Va.1993).

2. Respondents MacLeod, Pochert, Mahlik, McClure, Campbell, Cramer, Russell, and Barrow (the "First Oregon Eight") joined in a single complaint filed in the Circuit Court of the State of Oregon for the County of Multnomah. The Trust removed this action to the United States District Court for the District of Oregon, which subsequently remanded the matter to circuit court for reasons which will be fully explained in the text of this Memorandum.

Respondents Knott and Waysack filed separate suits in the Superior Court of the State of California, County of San Francisco. The Trust removed these actions to the United States District Court for the Northern District of California, which granted a motion to remand on the same basis as the *MacLeod* suit.

Respondents Holcomb, Weiland, Hutto and Wyatt filed separate suits in the Superior Court

As set forth in footnote number two, *supra*, two district courts have remanded three of the actions to state court. In so doing, the courts were persuaded by a common argument. In particular, the courts agreed that diversity jurisdiction depends on the citizenship of the Trust as an *entity* and concluded that because the Trust, through its beneficiaries, is a citizen of every state, diversity is destroyed. In making this determination, both Courts cited the unambiguous language of the CRF and the Administrative Order which states that the Trust itself is to be the defendant in all litigation.[3]

The Trust agrees with this general legal principle. However, the Trust encourages the Court to interpret the CRF and Administrative Order, for jurisdictional purposes only, as if the Trustees themselves were the named parties to any suit against the Trust. The Trust also moves the Court to conclude that if the Trustees are treated as the named defendants in Dalkon Shield suits, they are the real parties in interest and their citizenship controls for diversity jurisdiction purposes.

## II.

■ The controlling legal principles are not in dispute. In a suit by or against the individual trustees of a trust, diversity jurisdiction depends upon the citizenship of the "real parties to the controversy." *Navarro Sav. Ass'n v. Lee*, 446 U.S. 458, 461, 100 S.Ct. 1779, 1782, 64 L.Ed.2d 425 (1980). Where trustees "possess[ ] certain customary powers to hold, manage and dispose of assets for the benefit of others" and such powers are

"real and substantial," they are the real parties to the controversy and it is their citizenship, as opposed to that of the trust beneficiaries, that controls for diversity jurisdiction purposes. *Id.* at 464–66, 100 S.Ct. at 1783–84.

■ The rule is different where an artificial entity sues or is sued in its own name. Because partnerships, labor unions or trusts, unlike corporations, are not a "citizens" within the meaning of 28 U.S.C. § 1332(a), "diversity jurisdiction in a suit by or against [an artificial] entity depends on the citizenship of ... 'each of its members' as opposed to less than all its members." *Carden v. Arkoma Assocs.*, 494 U.S. 185, 195–96, 110 S.Ct. 1015, 1021, 108 L.Ed.2d 157 (1990) (*quoting Steelworkers v. R.H. Bouligny, Inc.*, 382 U.S. 145, 146, 86 S.Ct. 272, 273, 15 L.Ed.2d 217 (1965)). In such cases, the real party in interest test, as a method of determining which members' citizenship must be considered for diversity purposes, is inapplicable, *Carden*, 494 U.S. at 195, 110 S.Ct. at 1021; instead, a court must "count every member of an unincorporated association for purposes of diversity jurisdiction." *Id.* On this basis, the *Carden* court concluded that the citizenship of a limited partnership is determined by the citizenship of each and every partner, general and limited. *Carden*, 494 U.S. at 185, 110 S.Ct. at 1015–16.

As stated heretofore, two federal courts recently remanded several Dalkon Shield suits to state court. In so doing, both courts, because they considered *Carden* controlling in light of certain provisions of the CRF and

of the State of California, County of San Francisco. Again, the Trust removed. Respondents have moved to remand their cases on the same rationale as the *MacLeod* and *Knott/Waysack* cases. A hearing is scheduled for July 11, 1995.

Respondents Briggs, Plunkett, Drews, Mahler, Hames, McAllister, Edwards and Negron (the "Second Oregon Eight") joined in one suit filed in the Circuit Court of the State of Oregon for the County of Multnomah. The Trust has filed a notice of removal and the Second Oregon Eight have stated their intention to remand, again on the same grounds as *MacLeod* and *Knott/Waysack*.

Respondents Sharon and Jeffrey Gravitt filed a suit in the Circuit Court of Calhoun County,

Alabama. The Gravitts moved to remand, and later supplemented their motion with citations to *MacLeod* and *Knott/Waysack*. The matter has been stayed pending this Court's resolution of the instant matter.

3. The Trust suggests that these courts interpreted the CRF and Administrative Order. The Court does not agree. Indeed, the record reveals that the District Judge and Magistrate Judge in question took the language of the CRF and Administrative Order at face value. "[A] straightforward reading, understanding, or application of the plain and ordinary meaning of the Plan or CRF [or Administrative Order] provisions is not interpretation." *Besag v. Dalkon Shield Claimants Trust*, 197 B.R. 590, 594 (E.D.Va.1994).

the Administrative Order, concluded that diversity jurisdiction must be determined through the citizenship of the claimants, not the Trustees.

### III.

#### A. *The Trust's position*

The Trust's motion encourages the Court to interpret the CRF and Administrative Order in such a way that the *Navarro* approach to diversity jurisdiction would apply in Dalkon Shield suits. More particularly, the Trust moves the Court to interpret section E.5(b) of the Claims Resolution Facility ("CRF") and Amended Administrative Order Number 1, for *jurisdictional purposes only,* as if the five Trustees of the Trust were the named parties to any suit on a Dalkon Shield Claim, to prevent the CRF and Administrative Order from being construed as treating such suits as brought only against the Trust entity, rather than the Trust as represented by the real parties to the controversy, the Trustees. Trust Mem. at 1. Under this approach, the citizenship of the Trustees would be the focus in diversity analysis (assuming the Trustees can be considered the real parties in interest under *Navarro*) even though the Trust itself would still be the named defendant.

In support of its motion, the Trust raises several issues. The Trust notes initially that neither the Plan, the CRF nor the Claimants Trust Agreement ("CTR") prescribe the precise method for bringing suit against the Trust. In fact, the Trust suggests that the CTR indicates that the Trustees can be sued as party defendants in suits on Dalkon Shield claims.

The Trust further asserts that it was not until this Court issued the Administrative Order that the procedure for bringing a suit was defined. According to the Trust, the relevant provisions of CRF § E.5(b) and the Administrative Order served two purposes. First, such provisions were intended to preclude any suits against Robins, American Home Products ("AHP") or any other released individual or entity. Second, the Trust contends that the subject Administrative Order provisions "were designed to simplify the filing and service of Dalkon Shield arbitration and litigation." Trust Mem. at 31. More particularly, the Trust notes that the claimants were relieved of the burden of establishing the identity of, and serving, the five Trustees. The Trust further asserts that the Order benefitted the Trustees by eliminating the inconvenience of being named in numerous suits and repeatedly served with process, and by relieving them of the burdens associated with their indemnification rights. From these observations, the Trust concludes that the relevant CRF and Administrative Order provisions "were never intended to alter, much less eliminate, the Trust's otherwise existing right to remove cases on the basis of diversity of citizenship jurisdiction." Trust Mem. at 32.

#### B. *Who is a defendant under the Plan documents and this Court's Orders?*

Section 8.04 of the Plan states that a claimant may, after completing all proper Option 3 procedures, "continue or commence a jury trial against the Claimants Trust." This provision plainly says nothing about the status of the Trustees as parties to suits on Dalkon Shield claims; rather, it merely states that the Trust itself may be sued. Likewise, CRF § E.5(b), in preserving the right to jury trial, states that "the defendant in all trials ... shall be the Trust" and not Robins or AHP. Section E.5(b) also states that for actions pending at the time of the Chapter 11 filing, "the Trust shall be substituted as a party defendant in place of [Robins]." Where there was no action pending, a claimant may file a complaint "naming the Trust as defendant (not the Debtor or any Successor Corporation)." While it is true that § E.5(b) is designed, at least in part, to ensure that Robins and American Home are free from liability for Dalkon Shield claims, the section nowhere indicates that the Trustees may be named as defendants in Dalkon Shield suits.

Certain provisions of the Claimants Trust Agreement ("CTR"), as the Trust observes, indicate that the Trustees may be named parties in Dalkon Shield suits. For example, section 3.07(a) requires that the Trust indemnify any Trustee "who was or is party, or is

threatened to be made a party, to any threatened, pending, or completed action, suit or proceeding of any kind" for any expenses and liabilities related thereto. In addition, section 4.03(b) empowers the Trustees to "sue on or defend" Dalkon Shield claims.

This Court's Administrative Order puts to rest any uncertainty as to the identity of the proper defendant in Dalkon Shield claims. This Order filled a gap in the Plan, namely the proper procedure for pursuing litigation or arbitration. Paragraph 7 provides, in pertinent part: "No Arbitration or Litigation shall be filed or proceeded against any person or entity other than the Trust except as provided in Section 8.04 of the Plan respecting Unreleased Claims." Paragraph 8 sets forth the rule on service of process: "Following the entry of the certification order described in Paragraph 2 above, service of process on the Trust ... may be made by certified U.S. first-class mail, return receipt requested to Linda J. Thomason, Counsel, Dalkon Shield Claimants Trust." Finally, Paragraph 10.a requires any claimant commencing or recommencing litigation to "conform all pleadings to the terms of this Order by substituting the Trust as the defendant, by deleting or dismissing all other defendants and respondents." This Order leaves no doubt that the only permissible defendant in Dalkon Shield suits, excluding Unreleased Claims, is the Trust as an entity.

C. *What is the Trust's citizenship for diversity jurisdiction purposes?*

 The Supreme Court has made it painstakingly clear that the initial focus in conducting diversity analysis centers upon the parties to the action. Where the parties suing or being sued are trustees of a trust, diversity jurisdiction depends upon the citizenship of the trustees as long as they may be characterized as the real parties in interest under *Navarro*. On the other hand, where the party suing or being sued is an artificial entity, such as the Trust, the real party in interest test is inapplicable and the citizenship of the entity is determined by the citizenship of *all* its members.

While the Plan and related documents arguably provide conflicting signals as to whether the Trustees may be named defendants in Dalkon Shield suits, this Court's Administrative Order eliminates any uncertainty. In short, the only possible defendant in Dalkon Shield suits is the Trust as an entity. Given this conclusion, *Carden* is the controlling law and the citizenship of the Trust for diversity purposes must be determined by all the members of the Trust. Because the claimants possess interests in the corpus of the Trust, they are undoubtedly "members" of the Trust, much like the limited partners were "members" of the limited partnership in *Carden*. Thus, the Trust's citizenship must be determined by the citizenship of the claimants, irrespective of any effect on the Trust's ability to invoke diversity jurisdiction henceforth.

IV.

Because *Carden* controls, the Court will deny the Trust's requested interpretation of the CRF and the Administrative Order. Moreover, the Court will not address whether the Trustees may be considered the real parties in interest under *Navarro* as this point is now moot. Finally, the Court will not stay any proceedings related to the cases set forth in footnote 2, *supra*.

The Trust's motion essentially seeks the circumvention of *Carden* by carving an exception from the Administrative Order; specifically, that for jurisdictional purposes, the Trustees may be deemed party defendants even though the Trust would continue to be the named defendant. This interpretation would permit the Trust to have it both ways. On one hand, the Trust's ability to remove on diversity grounds would be preserved. On the other, the Trustees would continue to be relieved of the aforementioned burdens associated with indemnification and being a named party. Such a result is simply not reflective of the level playing field to which the Trust and claimants are entitled in litigation. *See Dalkon Shield Claimants Trust v. Fleming*, 197 B.R. 541, 546 (E.D.Va.1995) (playing field in ADR to be level); *Troutt v. Dalkon Shield Claimants Trust*, 197 B.R. 519, 522–23 (E.D.Va.1994) (playing field in arbitration to be level). Moreover, the Court, as a general principle, approaches

with great caution any invitation to craft a way around Supreme Court precedent, especially when such precedent existed at the time the Administrative Order was issued. Finally, while there may be some hardship associated with *Carden, see Bankston v. Burch,* 27 F.3d 164, 168–68 (5th Cir.1994) (acknowledging that *Carden* "effectively closes the doors of the federal courts to many lawsuits among partners or by partners against a partnership"), any harm to the Trust is relatively minimal because recourse to the federal courts still exists through federal bankruptcy jurisdiction.[4]

An appropriate Order shall issue.

### ORDER

This matter is before the Court on the Dalkon Shield Claimants Trust's ("Trust") motion to interpret the Sixth Amended and Restated Plan of Reorganization of the A.H. Robins Company ("Plan"), the related documents under which the Robins Bankruptcy is being managed, and Amended Administrative Order Number One ("Administrative Order"). Upon due consideration, for the reasons stated in the accompanying Memorandum this date filed, and deeming it just and proper so to do, it is ADJUDGED and ORDERED that the Trust's Motion to Interpret Plan, For Order in Aid of Plan and For Stay (Docket No. 23719) be and the same is hereby DENIED.

---

4. The Trust is not satisfied with the availability of federal bankruptcy jurisdiction because a federal court has greater latitude in remanding actions removed on that basis. Under 28 U.S.C. § 1452(b), cases removed on the basis of federal bankruptcy jurisdiction, unlike those removed on diversity grounds, can be remanded "on any equitable ground." An order remanding a case under this provision is not reviewable on appeal or otherwise. Moreover, a federal court may abstain from hearing a case within its bankruptcy jurisdiction "in the interest of justice, or in the interest of comity with State courts or respect for State law." 28 U.S.C. § 1334(c)(1). While the Trust's concerns may therefore be valid, it is not for this Court to alleviate any and all impediments that may now or hereafter hinder the Trust's access to federal court in Dalkon Shield cases.