In re A.H. ROBINS COMPANY, INCORPORATED, Debtor, Employer's Tax Identification No. 54–0486348.

DALKON SHIELD CLAIMANTS TRUST, Movant,

v.

Judith E. FELICIA, Samuel G. Felicia, Michael A. Pretl and H. Robert Erwin, Jr., Respondents.

No. 85–01307–R.

United States District Court, E.D. Virginia, Richmond Division.

July 26, 1995.

Consent Order Supplementing Decision Aug. 21, 1995.

---

---

H. Robert Erwin, Jr., Michael A. Pretl, Pretl & Erwin, P.A., Baltimore, Maryland, for Judith E. Felicia and Samuel G. Felicia.

Orran Lee Brown, Richmond, Virginia, for Dalkon Shield Claimants Trust.

### MEMORANDUM

MERHIGE, District Judge. ·

The Dalkon Shield Claimants Trust ("Trust") moves the Court for an Order enforcing the Sixth Amended and Restated Plan of Reorganization of the A.H. Robins Company ("Plan") ("Robins") against Dalkon Shield Claimants Judith and Samuel Felicia and their counsel, Michael Pretl and Robert Erwin (collectively, "Respondents"). This Court, which retains the exclusive jurisdiction to address such motions,[1] heard argument on July 10, 1995.

## I.

The Felicias are Dalkon Shield Claimants with Option 3 claims before the Trust. On March 20, 1992, this Court certified them to recommence litigation against the Trust.[2] An Amended Complaint was subsequently filed on May 11, 1992, substituting the Trust as the sole named Defendant. Upon the Trust's filing of the instant motion, the Felicia's case was stayed by the Maryland court, United States District Judge John R. Hargrove presiding. The matter remains stayed pending resolution of this matter.

In its motion, the Trust asserts that Pretl and Erwin have raised various interpretive issues in the *Felicia* case as well as in various other Dalkon Shield cases in which they are counsel of record. More particularly, the Trust states that Pretl and Erwin have improperly raised the following issues:

(1) The Amended Complaint filed in *Felicia* states that the Trust may be held liable for the Dalkon Shield-related liability of individuals *other than* Robins, including Dr. Hugh J. Davis (an original developer of the Dalkon Shield) and Dr. Frederick A. Clark, Jr. (a Robins medical director at the time of Robins' 1970 purchase of the Dalkon Corporation).[3]

(2) The *Felicia* Amended Complaint seeks compensatory damages measured by historic (pre-bankruptcy) settlement values with an enhancement for "current developments." The Amended Complaint also seeks prejudgment and postjudgment interest.[4]

---

**1.** *See* Debtor's Sixth Amended and Restated Plan of Reorganization § 8.05, March 28, 1988, *confirmed by In re A.H. Robins Co.*, 88 B.R. 742 (E.D.Va.1988), *aff'd* 880 F.2d 694 (4th Cir.1989), *cert. denied* 493 U.S. 959, 110 S.Ct. 376, 107 L.Ed.2d 362 (1989); Amended Administrative Order No. 1 ¶ 3, *In re A.H. Robins Co.*, Docket No. 11499 (E.D.Va. *nunc pro tunc* June 26, 1991), *aff'd*, 42 F.3d 870 (4th Cir.1994); *see also In re A.H. Robins Co., Inc. (Dalkon Shield Claimants Trust v. Reiser)*, 972 F.2d 77 n. 1 (4th Cir. 1992) (affirming the Court's exclusive jurisdiction); *Troutt v. Dalkon Shield Claimants Trust*, 197 B.R. 519 (E.D.Va.1994); *Besag v. Dalkon Shield Claimants Trust*, 197 B.R. 590 (E.D.Va. 1994); *Dalkon Shield Claimants Trust v. Shear*, 197 B.R. 556 (E.D.Va.1993).

**2.** The Felicias originally filed suit against A.H. Robins and Hugh J. Davis, M.D. on July 12, 1984, approximately one year prior to Robins' Chapter 11 filing.

**3.** *See e.g.*, Trust Mem., Exh. B (*Felicia* Amended Complaint ¶¶ 2 & 11) (the Trust is "substituted as defendant in this action for A.H. Robins Company, Dr. Hugh J. Davis, and Dr. Frederick A. Clark" and, "by virtue of the Plan and various orders of the bankruptcy court," has "succeeded to the liabilities" of Davis and Clark).

**4.** *See e.g.*, Trust Mem., Exh. B at 15, 16, 17, 18 (*Felicia* Amended Complaint Prayers for Relief) ("each plaintiff demands damages measured by the historic settlement value of the claims of each, updated by current developments, including interest at the legal rate from August 1985, or such damages as may be proven at trial").

(3) In another pending Maryland federal case, *DeLuca v. Dalkon Shield Claimants Trust*, the Trust's moved to narrow issues for trial down to causation and damages. In responding to this motion, Pretl and Erwin argued that no issues may be withdrawn prior to trial. Specifically, they proposed to the Maryland court that (a) the creation of the document depository in Amended Administrative Order No. 1 indicates that this Court "clearly contemplate[d]" that evidence of defect and state of mind "may be relevant at trial" and (b) the preservation of "all claims and defenses" at a trial by jury in section E.5(b) of the Claims Resolution Facility ("CRF") indicates that issues may not be narrowed. Of these four issues, only the first remained a contested issue at the hearing as the Trust and Pretl and Erwin had previously reached an agreement as to the others.

The record demonstrates that Pretl and Erwin began raising these issues as early as May, 1992. The same documentation reveals that the Trust has written Pretl and Erwin seven (7) times informing them that their pleadings raise interpretive issues within the exclusive jurisdiction of this Court. At the same time, the Trust sought Pretl and Erwin's cooperation in resolving the issues described above without Court involvement. Pretl and Erwin responded to the Trust's request by offering to file a "joint motion" to interpret the Plan.[5] In the alternative, Pretl and Erwin maintained (and still do) that it is the Trust's responsibility to bring these issues before the Court for resolution and that if the Trust fails to do so by the time of trial, "then it may fall by default to the local courts in Maryland and elsewhere to address these and numerous other issues." Trust Mem.,

Exh. A at 11 (November 10, 1992 Letter from Pretl to Trust).

Pretl and Erwin state that they have "always respected this Court's exclusive jurisdiction and have *never* requested any other court to interpret the Plan or related documents." Respondents Mem. at 1. They also suggest that none of the issues above require this Court's immediate involvement as the Trust's motion has been mooted by developments in *Felicia* and other Maryland cases.[6] As to the scope of the Trust's liability, Pretl and Erwin argue that this is not an issue unless the Trust attempts to defend a case by arguing that the sole cause of a plaintiff's injury was the conduct of Davis and/or Clark. Respondent's Mem at 8. Because the Trust has not furthered such a defense in *Felicia*, Pretl and Erwin suggest that the scope of liability issue may be rectified by the submission of a proposed jury instruction that, according to Pretl and Erwin, "is an accurate statement of the law which requires no interpretation of the Plan." [7]

The Trust, on the other hand, maintains that action is warranted by this Court. With respect to the liability issue, the Trust contends that it succeeds *only* to the liabilities of Robins. Moreover, the Trust proposes that the jury instruction regarding the scope of the Trust's liability "reflects Respondents' persistent attempt to attribute liability of defendants other than Robins to the Trust." In essence, the Trust wants to ensure that the liability issue (as well as the other three issues set out above) is withdrawn from any pending litigation *and* that Pretl and Erwin refrain from making the same allegations and arguments in future litigation.

---

5. As the Trust notes, a joint motion is nonsensical where two parties disagree as to the substance of the motion.

6. Pretl and Erwin concede that the issue of assigning liability to the Trust for the actions of individuals other than Robins may, at some later time, "require a decision by any court." Respondent's Mem at 2.

7. This instruction provides, in part:

Although Plaintiff originally brought her suit against Robins and two individuals allegedly

responsible for design, manufacture, testing and/or marketing of the Dalkon Shield, you are instructed that by virtue of the Robins bankruptcy proceeding, she is precluded from proceeding against any of those defendants. Therefore, any and all monetary claims for injuries related to the Shield are today the exclusive responsibility of the Trust.

Respondents Mem., Exh. D (proposed jury instruction). The Court agrees that this instruction disingenuously seeks to achieve the same inflammatory result as an affirmative statement that the Trust succeeded to the liabilities of Clark and Davis.

## II.

The instant matter is the product of continued gamesmanship on the part of Pretl and Erwin as they attempt to test the outer limits of the Plan and related documents at every conceivable opportunity. The *Felicia* Amended Complaint undoubtedly contains improper material.[8] The Trust tried, for three years, to reconcile the matter without involving the Court. Because such attempts were in vain, the Trust filed a motion with this Court to enforce the Plan. Only then did Pretl and Erwin engage in any meaningful dialogue with the Trust to resolve the contested issues.

While three of the four issues were resolved prior to the hearing, there still remains the issue concerning the scope of the Trust's liability. The Trust seeks to prevent Pretl and Erwin from arguing, in both pending and later litigations, that the Trust is responsible for the actions of anyone other than Robins. Pretl and Erwin state that they no longer seek to pursue this argument in *Felicia,* suggesting instead that the issue can forever be resolved by the aforementioned jury instruction. In fact, Pretl and Erwin at the July 10, 1995 hearing, moved the Court to approve this instruction. Because the proposed instruction involves the scope of the Trust's liability, the Court will treat Pretl and Erwin's motion as one to interpret the Plan and related documents and will entertain it accordingly.

The proposed jury instruction, as well as the contested liability language in the *Felicia* complaint, is totally at odds with the Plan and related documents, and if Pretl and Erwin are unaware of this, the Court, in an effort to protect claimants who depend upon them, will give serious thought to vacating its Order permitting them to seek certification of cases in which they are involved as counsel or broker. The principle that the Trust bears responsibility *only* for the liabilities of Robins is manifest. Indeed, this concept was a critical element of the Robins reorganization, as evidenced by the careful specification, in both the Plan and related documents, of the parties for whom the Trust bears successor liability. To begin, the Plan mandates that "[t]he Claimants Trust will assume full responsibility for resolving all Dalkon Shield Personal Injury Claims pursuant to the Claimants Trust Agreement ["CTR"] and Claims Resolution Facility [CRF]." Plan § 5.01. A Dalkon Shield Personal Injury Claim is "any Dalkon Shield Claim asserted by a Personal Injury Claimant." Plan § 1.41. A Dalkon Shield Claim means "all Claims, demands, suits and causes of action . . . now or hereafter asserted against [Robins, American Home Products, and Affiliates of Robins or American Home Products] or either of the Trusts." Clearly, the Plan nowhere contemplated that the Trust bears responsibility for the conduct of individuals such as Drs. Davis and Clark.

The same can be said of the Claimants Trust Agreement, pursuant to which all Dalkon Shield Claims are resolved. More particularly, a critical purpose of the Trust is "to assume any and all liabilities of Robins, its successors in interest . . . and any of their Affiliates for . . . all Dalkon Shield Personal Injury Claims." CTR § 2.02. To accomplish this purpose, the Trust

> assumes and shall be directly liable for any and all liabilities . . . of Robins, its succes-

---

8. Pretl and Erwin's consistent and futile gamesmanship is also revealed in concurrent correspondence with this Court and the Maryland court. On May 26, 1995, Erwin wrote this Court acknowledging that on March 3, 1995, *Felicia* and another case had been stayed by the Maryland court until this Court resolved the instant controversy. Erwin then complained that "the Trust has not seen fit to respond to our reply or take any further position on the matters raised therein." Erwin concluded by requesting a ruling on the instant matter. *See* Trust Reply Mem., Exh. A.

The very same day, Erwin, without copying this Court, wrote the Maryland court, reminding Judge Hargrove that he had stayed *Felicia* and another case pending this Court's resolution of the instant matter. Erwin then groused that "Judge Merhige has not scheduled oral argument nor otherwise ruled on the pending motion." In conclusion, Erwin requested the Maryland court to lift its stays because the Trust had not yet *responded to Respondent's reply and because* "the United States District Court in Virginia has not seen fit to rule on these matters." *Id.,* Exh. B. This attempt to play one Federal Court against another represents lawyering at its most base level and, thus, is not surprising. In short, such efforts are not worthy of any further comment.

sors in interest (including [American Home Products]) and any of their Affiliates, present or future, for all Dalkon Shield Personal Injury Claims and Dalkon Shield Liquidated Claims held by Personal Injury Claimants ... as provided in the Claims Resolution Facility.

*Id.* Thus, the Claimants Trust Agreement firmly closes the door on any suggestion that the Trust succeeds to the liabilities of any person or entity other than those unambiguously listed in section 2.02.

On this basis, the Court concludes that the Plan and related documents succinctly and explicitly set forth the only parties for which the Trust bears successor liability for Dalkon Shield Claims—Robins, American Home Products and any present or future Affiliates of Robins and American Home Products. Any affirmative suggestion (i.e., the *Felicia* complaint) that the scope of the Trust's liability is any more broad is contrary to the plain meaning of the Plan. Moreover, the same can be said of Pretl and Erwin's proposed jury instruction which, as previously stated, surreptitiously suggests that the conduct of Drs. Davis and Clark should be considered in determining the Trust's liability. The adulteration of Dalkon Shield Claim litigation in this manner is as reprehensible as the frontal attack exhibited in the *Felicia* complaint and is equally prohibited by the Plan.

The Court therefore will enjoin Pretl and Erwin from submitting the suggested instruction to the *Felicia* court or any other court in pending or future litigations. Pretl and Erwin will also be ordered to withdraw, from *Felicia* and any other pending case, any and all pleadings or other court documents that contain *any* reference to the Trust's liability for the conduct of any individual or entity other than those entities set forth in the Plan and Claimants Trust Agreement. Finally, Pretl and Erwin will be permanently enjoined from making similar statements in future pleadings and court documents.

### III.

The Court abhors the tactics employed by Messrs. Pretl and Erwin. Such are unworthy of the legal profession. In future situations where they seek to pursue a questiona-

ble course of action or advance an untested argument to which the Trust objects, Pretl and Erwin (as well as all counsel) are admonished to petition this Court for an interpretation of the Plan under section 8.05 before the Trust is compelled to spend claimant funds on a defense. As presumably experienced Dalkon Shield lawyers, Pretl and Erwin will undoubtedly know where and when such a motion is necessary. Failure to adhere to this instruction will not be tolerated and, in such an event, the Court will impose any one or any combination of the following sanctions: denying future certification applications for Pretl and Erwin clients, staying any and all Pretl and Erwin cases until they have withdrawn as counsel, revoking Pretl and Erwin's status to practice law in this Court and imposing substantial monetary sanctions.

An appropriate Order shall issue.

### CONSENT ORDER

This matter is before the Court on the Trust's Motion to Enforce Plan and for Stay. Upon being apprised that the Dalkon Shield Claimants Trust ("Trust"), and Judith E. Felicia, Samuel G. Felicia, Michael A. Pretl and Robert H. Erwin, Jr., through counsel, had resolved certain matters in controversy between them, and upon the request of the parties, it is ORDERED as follows, in addition to the rulings of the Court in its Order of July 26, 1995 (Docket No. 24466) in this contested matter:

1. For purposes of this Order, "Plan" shall mean the Sixth Amended and Restated Plan of Reorganization of A.H. Robins Company, Inc.; "CRF" shall mean the Claims Resolution Facility, which is Exhibit C to the Plan; "Robins" shall mean A.H. Robins Company, Inc.; "Dalkon Shield Personal Injury Claim" has the meaning given it in § 1.41 of the Plan; and "Pretl and Erwin" shall mean Michael A. Pretl, Robert H. Erwin, Jr., the law firm of Pretl & Erwin, P.A., and any other attorney or employee associated with Pretl, Erwin or Pretl & Erwin, P.A., acting on their own behalf or on behalf of any party they represent.

2. Pretl and Erwin agree that prejudgment interest is not recoverable on Dalkon

Shield Personal Injury Claims against the Trust pending in Maryland or in any case which Maryland law is applied and shall not allege or seek such interest in such cases, and in any other case shall not allege or seek prejudgment interest without first obtaining a ruling from this Court that such interest is allowable on Dalkon Shield Personal Injury Claims.

3. Pretl and Erwin agree that post-judgment interest is recoverable on Dalkon Shield Personal Injury Claims only as provided in 28 U.S.C. § 1961, and shall not allege or seek such interest on any different terms.

4. Pretl and Erwin agree that historical settlement values of claims against Robins cannot be used to measure the amount of damages awarded to any plaintiff on a Dalkon Shield Personal Injury Claim against the Trust and shall not assert or allege any such claims in any suit against the Trust.

5. Pretl and Erwin agree that the existence of the document depository approved by this Court in its Amended Administrative Order No. 1 and the fact that certain documents or testimony are housed in the document depository have no effect on the admissibility or relevance of evidence in suits on Dalkon Shield Personal Injury Claims and shall not assert or allege any such claims in any suit against the Trust.

6. Pretl and Erwin agree that the provision in § E.5(b) of the CRF that "[a]ll claims and defenses shall be available to both sides in a trial" does not preclude the Trust or a Court from narrowing the issues to be tried in a suit on a Dalkon Shield Personal Injury Claim and shall not assert or allege any such claims in any suit against the Trust.